[Nos. E009749, E010088. Fourth Dist., Div. Two. Jan. 27, 1995.]

STUBBLEFIELD CONSTRUCTION COMPANY et al., Plaintiffs and Appellants, v.
CITY OF SAN BERNARDINO, Defendant and Appellant.

688

COUNSEL

Hill, Farrer & Burrill, Darlene Fischer Phillips and Dean E. Dennis for Plaintiffs and Appellants.

James F. Penman, City Attorney, Henry Empeño, Jr., Deputy City Attorney, MacLachlan, Burford & Arias, Christopher D. Lockwood and Joseph Arias for Defendant and Appellant.

OPINION

HOLLENHORST, J.—This is an action for violation of plaintiffs' civil rights under 42 United States Code section 1983. The action arose out of defendant city's handling of plaintiffs' application to build apartment

buildings on a 29.3-acre parcel in the northeastern foothills of the city. Plaintiffs contend that the city violated their substantive due process and equal protection rights by allegedly deliberately inflicting harm "when [city officials] irrationally and arbitrarily manipulated City processes and procedures, for no legitimate reason, so as to prevent Stubblefield from building a development Project it was unquestionably entitled to build."

## PROCEDURAL HISTORY

On April 18, 1988, plaintiffs Stubblefield Construction Company and Stubblefield Properties (herein plaintiffs or Stubblefield) filed a petition for writ of mandate and complaint for declaratory relief, preliminary and permanent injunctions and damages against the City of San Bernardino (the City), the members of its common council, the mayor, and Steve Marks, a former councilman (case No. 242998; herein Stubblefield I). Eleven causes of action were alleged, including an eighth cause of action for deprivation of civil rights under 42 United States Code section 1983.

On November 4, 1988, the City filed an amended cross-complaint for apportionment of fault and indemnification.

On September 29, 1989, plaintiffs filed an action challenging the validity of the City's revised general plan (case No. 252058; herein Stubblefield II). The action was based on events occurring after events in Stubblefield I. Plaintiffs then filed a motion to consolidate Stubblefield I and Stubblefield II. The motion was granted and the cases were consolidated for trial.

At the commencement of trial, the court initially ordered a jury trial on the eighth cause of action in Stubblefield I (alleged violation of civil rights under 42 U.S.C.A. § 1983) and the seventh cause of action in Stubblefield II (insofar as it related to damages sustained under 42 U.S.C.A. § 1983). All other causes of action in both cases were to be tried to the court sitting without a jury after the jury trial.

The case was submitted to the jury for a special verdict on six questions. The first three questions related to plaintiffs' claim that the City violated plaintiffs' substantive due process rights. The remaining three questions related to the issue of whether the City violated plaintiffs' equal protection rights in connection with plaintiffs' proposed apartment project.

The jury found that defendant City's actions with regard to Stubblefield's proposed apartment project were (1) not taken for a purpose substantially

related to the public health, safety, morals, or general welfare[1] and (2) were motivated with a purpose of intending to discriminate against Stubblefield. It further found that the City's actions caused plaintiffs damages in excess of $11.5 million.

Judgment on the jury's special verdict was entered on April 10, 1991, and plaintiffs dismissed the remaining causes of action in Stubblefield I with prejudice.

The trial court subsequently granted the City's motion for new trial on the issue of the amount of damages. It denied the City's motion for a new trial on the liability issues.

APPEALS

1. *The City's Appeals.*

Following the jury's verdict, the City filed a motion for judgment notwithstanding the verdict. The trial court denied the motion and the City appeals. The City also filed a cross-appeal from the judgment.

The trial court also made an interim award of attorney fees to plaintiffs. The City appeals that order.

2. *Plaintiffs' Appeals.*

The City also filed a motion for new trial. As noted above, the trial court granted the motion on the issue of damages only. Plaintiffs appeal the granting of the motion for new trial on the damages issue.

Plaintiffs also requested review of rulings of the trial court (1) denying their motion to file a supplemental pleading and (2) granting defendant's motion for a nonsuit as to defendant Steve Marks, a former councilman.

Plaintiffs filed a notice of cross-appeal from the judgment, including the order granting defendant's motion for a nonsuit as to defendant Steve Marks.

---

[1]This is a test apparently derived from the leading zoning case of *Euclid* v. *Ambler Co.* (1926) 272 U.S. 365 [71 L.Ed. 303, 47 S.Ct. 114, 54 A.L.R. 1016]. In that case, the Supreme Court held that, before a zoning ordinance could be held unconstitutional, the court must find that the "provisions are clearly arbitrary and unreasonable, having no substantial relation to the public health, safety, morals, or general welfare." (*Id.* at p. 395 [71 L.Ed.2d at p. 314]; see also *Moore* v. *East Cleveland* (1977) 431 U.S. 494, 498, fn. 6 [52 L.Ed.2d 531, 536, 97 S.Ct. 1932]; *Sinaloa Lake Owners Ass'n* v. *City of Simi Valley* (9th Cir. 1989) 882 F.2d 1398, 1407-1409, cert. den. 494 U.S. 1016 [108 L.Ed.2d 493, 110 S.Ct. 1317]; *Greenbriar, Ltd.* v. *City of Alabaster* (11th Cir. 1989) 881 F.2d 1570, 1577.) The question of whether the actions here were arbitrary or unreasonable was not put to the jury.

### 3. Rulings of This Court.

In response to a motion filed by the City on September 20, 1991, this court dismissed plaintiffs' cross-appeal from the judgment by an order filed October 21, 1991, and a partial remittitur was issued on December 24, 1991. Ruling was reserved on other orders made on March 5, 1991. This court said: "The effect of the dismissal of [Stubblefield's] purported cross-appeal is to bar any appeal of the order of dismissal of Steve Marks, who is, therefore, not a party to this appeal. Any review of the order of March 5, 1991, is limited to its effect, if any, on the granting of the motion for new trial Stubblefield appealed by its notice filed July 9, 1991."

### FACTS

Under plaintiffs' theory of the case, which was apparently accepted by the jury, the City officials arbitrarily acted to prevent plaintiffs from developing their property. Plaintiffs alleged a number of actions which the City officials took to allegedly further this plan. Viewing the evidence in the light most favorable to plaintiffs, the factual basis for plaintiffs' claim is summarized in this section.[2]

Arnold Stubblefield testified that his company purchased approximately 600 acres of land in the foothills northeast of the City in the early 1960's. He commenced planning a community to be known as Mountain Shadows. Homes were built in the area from 1964 through 1968.

In 1968, Mr. Stubblefield consented to the annexation of the property by the City. Mr. Stubblefield and a former mayor testified that Mr. Stubblefield was promised the zoning necessary to implement the master plan if he consented to the annexation. The City knew that Stubblefield would rely on its assurances and the City intended that it do so.[3] The subject parcel was zoned R-3 for multifamily housing pursuant to the master plan for the property.

In 1983, planning began for an apartment project in the foothills. After numerous meetings with the City staff, an application for review of plans was submitted to the City on May 30, 1986. The application was considered

---

[2]Plaintiffs called as witnesses the members of the city council at the time various actions were taken, two former mayors, two heads of the planning department, and various other City officials. The trial lasted 10 weeks and produced a transcript approaching 5,000 pages.

[3]Of course, one mayor or city council cannot limit the exercise of the police power by future mayors or city councils. (*Delucchi* v. *County of Santa Cruz* (1986) 179 Cal.App.3d 814, 823 [225 Cal.Rptr. 43].)

a development application. A former planning director testified that the City's policy was to review development applications under the procedures in effect at the time the plans were submitted. This policy was stated to Stubblefield a number of times. Development applications were reviewed by the planning department, including review by an environmental review committee and the development review committee. Final approval is by the planning commission and/or city council.[4]

City council member representing the area at the time was Steve Marks. Although originally a supporter of the project, he subsequently became a powerful opponent. Plaintiffs alleged that Councilman Marks orchestrated a number of actions in the fall of 1986 to block the project. The City contended that Councilman Marks was merely reflecting the concerns of his constituents, many of whom testified against the project.

A revision of the City's R-3 multifamily housing zoning ordinance was pending at that time. The revised multifamily housing zoning ordinance was adopted on October 22, 1986. It potentially affected Stubblefield's project in two respects. First, it limited the height of apartments to two stories on the perimeter of the project. Second, it required a conditional use permit for any project which did not comply with the new ordinance. If the new ordinance were applied to the Stubblefield project, which contemplated three-story units, the project would require a conditional use permit. There was testimony that these requirements were aimed at the Stubblefield project. However, Mr. Stubblefield was assured that the new ordinance would not apply to his project.

Since revision of the zoning ordinance would not affect the Stubblefield project under the City's existing approval policy (i.e., that development plans were reviewed under the rules in effect at the time of application, rather than the time of approval), Councilman Marks proposed an urgency ordinance to change the policy. The urgency ordinance was adopted on October 20, 1986. It provided that the revised R-3 ordinance would apply to "all projects for which plans have not been approved by the Development Review Committee as of thirty days following date of adoption of this

---

[4]The former planning director testified that the planning department approval process was ministerial rather than discretionary. He also testified that Stubblefield met all the requirements of the review of plans process. From this testimony, plaintiffs argue that they had a right to have their application approved. However, the witness conceded that some parts of the approval process, such as whether an environmental impact report would be required, were discretionary.

section."[5] No justification for an urgency ordinance existed, except the desire to block approval of the Stubblefield project.

Stubblefield could still have received approval within the 30-day period. At that time, it had received approval from the environmental review committee for using a negative declaration under the California Environmental Quality Act (CEQA) on the project. However, Councilman Marks had previously sponsored an ordinance that allowed any person, not just the applicant, to appeal such a decision to the planning commission.[6] The ordinance passed on September 10, 1986, and Councilman Marks subsequently appealed the environmental review committee's negative declaration decision to the planning commission. By this action, he delayed design review committee approval of the Stubblefield project. The project was not approved within the requisite 30-day period.

On October 20, 1986, Councilman Marks engineered another amendment to the review of plans ordinance. Under the amendment, the proposed buildings had to be compatible with the surrounding neighborhood. This amendment was also aimed at the Stubblefield project.

The planning commission agreed with the environmental review committee that a negative declaration was appropriate. Objecting homeowners in the neighborhood appealed that decision to the city council. On November 17, 1986, a city council meeting was held at Sturges Auditorium to consider the appeal. A lengthy public hearing heard presentations by the homeowners, their attorney, and various experts about the potential environmental effects of the project. At the conclusion of the hearing, the city council voted, four to three, to require a focused environmental impact report for the project. A number of persons present at that meeting testified at trial concerning events of the meeting. The effect of the requirement for a focused environmental impact report was to prevent Stubblefield's review of plans application from being approved before the new multifamily zoning ordinance took effect.

Stubblefield accepted the city council's decision and intended to prepare an environmental impact report. The City notified Stubblefield that it would

[5]Former Councilman Strickler testified that the former policy was that a developer had a year from the filing of his application to meet the requirements of the zoning ordinance. The urgency ordinance reduced that period to 30 days. He thought the ordinance would have no effect on the Stubblefield project because he thought that project was grandfathered. He also thought the new guidelines would benefit developers.

[6]Former Councilman Strickler testified that he thought the ordinance was redundant because he understood that any councilman could bring a matter that was before a committee to the full council at any time without filing a formal appeal.

require an environmental impact report and resubmission for a conditional use permit. Since a conditional use permit is discretionary and could be denied by the city council, Stubblefield was not willing to risk denial after paying for an environmental impact report. Stubblefield also thought a report was not feasible until the City determined whether it would allow three-story apartment buildings on the project. Accordingly, no environmental impact report was ever prepared, and no conditional use permit application was submitted.[7]

Instead, Stubblefield requested the city council to grandfather its project so that it could proceed under the requirements of the prior ordinance. The city council referred the question to the legislative review committee. The legislative review committee delayed action on the request until early 1987. The committee asked the city attorney and the planning director to review and analyze the City's position for the committee.

Five new council members were elected in March 1987. The planning director and city attorney left and their positions were vacant for several months. No action was taken on Stubblefield's grandfathering request, and the opinions of the city attorney and planning drector were not forthcoming.

In March 1987, an unrelated lawsuit was filed challenging the adequacy of the City's general plan. As a result of that lawsuit, a moratorium on development was imposed by the court. The city council passed an ordinance to implement the moratorium. The moratorium was under the supervision of the California Office of Planning and Research (OPR). The former director of OPR testified as to the meaning and effect of the moratorium. Plaintiffs alleged that the City applied the moratorium to include the Stubblefield property, and used the moratorium as an excuse not to take any further action on Stubblefield's grandfathering request, or on the project itself. The City took no action on Stubblefield's request to obtain clarification of the moratorium provisions from OPR. The moratorium was in effect for two years.

A staff report prepared by the new planning director on September 8, 1987, for the city council reviewed the grandfathering request in some detail and recommended denial of the request. The council subsequently referred the matter to the legislative review committee for a second time.

Stubblefield was not told that action on its grandfathering request was tabled, but was notified by the new planning director that its development

---

[7]Mr. Stubblefield testified that he was faced with three choices at the time: (1) to redesign the project to comply with the new ordinance; (2) to prepare the environmental impact report, submit the conditional use permit application, and hope for discretionary approval of the project; or (3) to pursue the grandfathering application. He elected the latter option.

application could not be processed further until a new general plan was adopted.

On January 19, 1988, the city council held a hearing on Stubblefield's application to grandfather its project. Despite an invitation to present argument in support of its application at that hearing, Stubblefield's request to speak was summarily denied on grounds that the hearing was not a public hearing. The council then voted to deny approval of grandfathering.

The Stubblefield I complaint was filed on April 18, 1988. On June 2, 1989, a new general plan was adopted. Plaintiffs contend that it effectively prevented all development of the subject property. Damages were awarded on this basis.

## ISSUES

1. *Issues Raised by the City.*

The City's primary contention is that its motion for judgment notwithstanding the verdict should have been granted because there was insufficient evidence to support a judgment for plaintiffs on either an equal protection or substantive due process theory.

In its cross-appeal, the City contends that a new trial should have been granted on all issues because of errors in the jury instructions and special verdict form, for juror misconduct, and for errors in the admission and exclusion of evidence.

The City also challenges the interim award of attorney fees to plaintiffs on grounds that plaintiffs have not achieved any success on the merits due to the granting of the new trial motion on the issue of damages.

2. *Issues Raised by Plaintiffs.*

Plaintiffs challenge the trial court's order granting a new trial on the issue of damages and seek to preserve the jury's finding of over $11.5 million in damages.

3. *Issue Raised by This Court.*

In a letter dated September 16, 1994, this court requested the parties to comment on the applicability of *Morehart* v. *County of Santa Barbara* (1994) 7 Cal.4th 725 [29 Cal.Rptr.2d 804, 872 P.2d 143] and the one final judgment

rule to this case. The parties submitted letter briefs on that subject, and we consider that issue first.

APPEALABILITY

■ In *Morehart* v. *County of Santa Barbara*, *supra*, 7 Cal.4th 725, our Supreme Court considered and rejected the holding of *Schonfeld* v. *City of Vallejo* (1975) 50 Cal.App.3d 401 [123 Cal.Rptr. 669] that a final judgment resulted when a cause of action was properly severed, even though other causes of action remained to be tried. (*Id.*, at pp. 418-419.)

*Morehart* held that ". . . an appeal cannot be taken from a judgment that fails to complete the disposition of all the causes of action between the parties even if the causes of action disposed of by the judgment have been ordered to be tried separately, or may be characterized as 'separate and independent' from those remaining." (*Morehart* v. *County of Santa Barbara*, *supra*, 7 Cal.4th 725, 743.)

In applying *Morehart* here, we must first determine whether all of the causes of action between the parties include all causes of action alleged in Stubblefield I and Stubblefield II. In other words, we must consider the effect of the order consolidating Stubblefield I and Stubblefield II for trial.

1. *Effect of Consolidation Order.*

■ Code of Civil Procedure section 1048, subdivision (a), provides: "When actions involving a common question of law or fact are pending before the court, it may order a joint hearing or trial of any or all the matters in issue in the actions; it may order all the actions consolidated and it may make such orders concerning proceedings therein as may tend to avoid unnecessary costs or delay."

Consolidation may be for all purposes, or for purpose of trial only: "Ordinarily, consolidated actions may be determined by a single set of findings and a single judgment—'the allegations of the various complaints may be taken together and treated as one pleading' [citation] and 'for the purposes of all further proceedings, the cases are to be treated as if the causes had been united originally' [citation]. But a different situation exists where pending actions are consolidated only for the purpose of trial of related issues. In such event the evidence presented in one case is to be deemed applicable in the other insofar as it is relevant thereto, but separate findings and judgments must be made in each case in disposition of the particular issues as independently submitted." (*McClure* v. *Donovan* (1949) 33 Cal.2d 717, 721-722 [205 P.2d 17].)

██ Here, plaintiffs' consolidation motion requested that the two cases be consolidated for trial. The motion was granted and the consolidation order specified that the consolidation was for trial only. Separate findings and judgments were therefore required in each case.

## 2. *Effect of Separate Trial of Civil Rights Cause of Action.*

Stubblefield I alleged 11 causes of action. The eighth, deprivation of civil rights under 42 United States Code section 1983, was tried to the jury. Of the remaining causes of action, six were dismissed before trial and four were dismissed after trial. In addition, the City filed a cross-complaint in Stubblefield I. The record does not reflect the disposition of the cross-complaint.[8]

Stubblefield II alleged eight causes of action. The seventh cause of action alleged that the City's general plan, adopted after the events in Stubblefield I, imposed a Hillside Management Overlay District that affected the value of all of plaintiffs' property in that district, including the apartment house site at issue in Stubblefield I. Plaintiffs seek $44 million in damages in Stubblefield II.

Originally, the seventh cause of action was ordered tried with the eighth cause of action in Stubblefield I "insofar as [the seventh cause of action] relates to the damages suffered by plaintiff for any violation of the due process or of the civil rights under 1983 . . . ." Subsequently, the trial court denied a motion to reconsider this ruling and said: "[T]he plaintiff will not be permitted to offer any evidence whatsoever on any of the causes of action of *Stubblefield II* to the jury. [¶] The plaintiff will be permitted to indicate to the jury the ultimate effect of the delay and the adoption of the General Plan, but will not be permitted to attack in any degree by innuendo or any other way the propriety of the General Plan or the H.M.O.D." By stipulation and court order, the remaining causes of action in Stubblefield II were to be tried by the court upon conclusion of the jury trial.

From the foregoing, we conclude that (1) the judgment in Stubblefield I is a final judgment, and that the appeals related to that judgment do not violate

---

[8]Normally, the existence of an unresolved cross-complaint will defeat appealability under the one final judgment rule because it leaves unresolved issues between the parties. (1 Eisenberg, Cal. Practice Guide: Civil Appeals & Writs (The Rutter Group 1994) ¶ 2:70, pp. 2-33 to 2-34.) However, it appears that the cross-complaint here was tried with the cause of action submitted to the jury, was necessarily abandoned or decided adversely to the City, and was inadvertently omitted from the judgment. In these circumstances, the technical presence of a cross-complaint does not violate the one final judgment rule. (*Ibid.*)

*Morehart* or the one final judgment rule; and (2) no part of Stubblefield II has been tried, and the issues in that case are not before us in this appeal.[9]

## CITY'S APPEAL OF JUDGMENT NOTWITHSTANDING THE
## VERDICT—STANDARD OF REVIEW—JNOV

█ The City's appeal from the trial court's denial of the City's motion for judgment notwithstanding the verdict is a challenge to the sufficiency of the evidence to support the jury's verdict and the trial court's decision. The standard of review is essentially the same as when the trial court has granted the motion.

█ " 'In making the order granting the motion for judgment notwithstanding the verdict, the trial court may not weigh the evidence or judge the credibility of the witnesses, as it may do on a motion for a new trial, but must accept the evidence tending to support the verdict as true, unless on its face it should be inherently incredible. Such order may be granted only when, disregarding conflicting evidence and indulging in every legitimate inference which may be drawn from plaintiff's evidence, the result is no evidence sufficiently substantial to support the verdict. [¶] █ 'On an appeal from the judgment for defendant notwithstanding the verdict, the appellate court must read the record in the light most advantageous to the plaintiff, resolve all conflicts in his favor, and give him the benefit of all reasonable inferences in support of the original verdict. . . .' " (*Borba* v. *Thomas* (1977) 70 Cal.App.3d 144, 151-152 [138 Cal.Rptr. 565], quoting *Hale* v. *Farmers Ins. Exch.* (1974) 42 Cal.App.3d 681, 690 [117 Cal.Rptr. 146], overruled on another ground in *Egan* v. *Mutual of Omaha Ins. Co.* (1979) 24 Cal.3d 809, 822, fn. 5 [169 Cal.Rptr. 691, 620 P.2d 141].) Accordingly, we determine whether there is substantial evidence to support the jury's conclusions and the trial court's decision, i.e., whether plaintiffs proved every element of their cause of action. (*Sukoff* v. *Lemkin* (1988) 202 Cal.App.3d 740, 743-744 [249 Cal.Rptr. 42]; *Sprigg* v. *Garcin* (1980) 105 Cal.App.3d 869, 873 [164 Cal.Rptr. 677].)

---

[9]In their letter briefs, the parties agree that *Morehart* is inapplicable and that this appeal of Stubblefield I should be decided on its merits.

The parties also agree that no part of Stubblefield II has been tried. The City contends that the trial court allowed plaintiffs to try their damages claims from Stubblefield II during Stubblefield I without first establishing liability and that the trial court subsequently realized its error when it granted a new trial on damages. Nevertheless, the City agrees that Stubblefield II has not been tried.

Since plaintiffs' damages claim in Stubblefield II is based on the theory that its property was rendered valueless by the adoption of the Hillside Management Overlay District, interesting appealability and consolidation issues would have been raised if the trial court had not granted a new trial on the damages issue.

Before reviewing the question of whether there was substantial evidence to support the jury's verdict and the trial court's decision, we consider the general principles of plaintiffs' cause of action for deprivation of its civil rights.

### General Principles of Civil Rights Actions and Due Process

■ The civil rights statute provides: "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress. . . ." (42 U.S.C.A. § 1983.)

The essential elements of a cause of action are, therefore, (1) whether the conduct complained of was committed by a person acting under color of state law; and (2) whether this conduct deprived a person of rights, privileges, or immunities secured by the Constitution or laws of the United States. (*Parratt* v. *Taylor* (1981) 451 U.S. 527, 535 [68 L.Ed.2d 420, 428-429, 101 S.Ct. 1908], overruled on another ground in *Daniels* v. *Williams* (1986) 474 U.S. 327 [88 L.Ed.2d 662, 106 S.Ct. 662].)

The use of 42 United States Code section 1983 in the land-use context dates from *Monell* v. *New York City Dept. of Social Services* (1978) 436 U.S. 658 [56 L.Ed.2d 611, 98 S.Ct. 2018]. In that case, the Supreme Court overruled an earlier case that had held that local governments were wholly immune from suit under section 1983. (436 U.S. at p. 663 [56 L.Ed.2d at pp. 618-619].) The court reviewed the legislative history and concluded that Congress intended to include municipal government units to be included among the persons to whom section 1983 applies. (436 U.S. at p. 690 [56 L.Ed.2d at p. 635].) The court therefore held that local governing bodies can be sued for damages where the action alleged to be unconstitutional "implements or executes a policy statement, ordinance, regulation, or decision officially adopted and promulgated by that body's officers." (*Ibid.*) The decision also allowed suits for deprivations resulting from the custom of local governments, even if the custom had not been formally approved by the governing body. (*Id.* at pp. 690-691 [56 L.Ed.2d at pp. 635-636].)

Subsequently, in *Owen* v. *City of Independence* (1980) 445 U.S. 622 [63 L.Ed.2d 673, 100 S.Ct. 1398], the Supreme Court reviewed a suit by a dismissed chief of police and held that the good faith of city officials did not give the municipality a qualified immunity from suit under section 1983.

(445 U.S. at p. 638 [63 L.Ed.2d at pp. 685-686].) Thus the municipality itself had no immunity from damages flowing from its constitutional violations of the rights of individual citizens. (*Id.* at p. 657 [63 L.Ed.2d at p. 697].)

In *Parratt* v. *Taylor, supra,* 451 U.S. 527, the court held that, although prison officials there clearly acted under color of state law, the deprivation element was not satisfied because postdeprivation remedies under state law were adequate to satisfy due process. Specifically, the tort claims procedure of the state provided such a remedy for the prisoner who had suffered a tortious loss of his property. (*Id.* at p. 543 [68 L.Ed.2d at pp. 433-434].) Accordingly, there was no violation of the due process clause, and no violation of section 1983.

Similarly, in *Hudson* v. *Palmer* (1984) 468 U.S. 517 [82 L.Ed.2d 393, 104 S.Ct. 3194], the court extended the principle to include cases in which deprivation resulted from intentional state actions which deprived a prisoner of his property.

The Supreme Court applied these principles in a land-use case in which the developer sued under 42 United States Code section 1983 and argued that the planning commission had taken his property without paying just compensation. The Supreme Court held the claim premature. (*Williamson Planning Comm'n* v. *Hamilton Bank* (1985) 473 U.S. 172 [87 L.Ed.2d 126, 105 S.Ct. 3108].) The court said that resolution of the due process issue "depends, in significant part, upon an analysis of the effect the Commission's application of the zoning ordinance and subdivision regulations had on the value of respondent's property and investment-backed profit expectations. That effect cannot be measured until a final decision is made as to how the regulations will be applied to respondent's property. No such decision had been made at the time respondent filed its § 1983 action, because respondent failed to apply for variances from the regulations." (*Id.* at p. 200 [87 L.Ed.2d at p. 147].)

In addition, the Second Circuit has held that denial of a request for zoning relief does not involve denial of a protected property right. (*Yale Auto Parts, Inc.* v. *Johnson* (2d Cir. 1985) 758 F.2d 54.) The First Circuit has also declined to find a due process violation in the ordinary type of dispute between a developer and a local planning agency. (*Creative Environments, Inc.* v. *Estabrook* (1st Cir. 1982) 680 F.2d 822, 833.)

Lower federal courts have also applied an abstention doctrine to refrain from turning local land use disputes into federal civil rights claims. (E.g., *C-Y Development Co.* v. *City of Redlands* (9th Cir. 1983) 703 F.2d 375.)

## SUBSTANTIAL EVIDENCE ISSUES

The parties here stipulated that the officials here were acting under color of law, and that they acted intentionally. The first element of the cause of action was therefore satisfied. The issue thus becomes a question of whether Stubblefield was deprived of a federal constitutional right, i.e., the right to substantive due process and/or the right to equal protection of law.

The City argues that the trial court erred in failing to determine certain legal issues which relate to these questions.[10]

With regard to substantive due process, the City first argues that the trial court erred in failing to initially determine whether plaintiffs had a property right protected by the due process clause, i.e., whether plaintiffs had a vested right to develop their property. If the trial court had considered and made this determination, the City contends that it would have found that no property right existed, and that there was insufficient evidence to submit the issue to the jury.

Secondly, the City argues that there was no deprivation of substantive due process rights because Stubblefield failed to prove a substantive due process violation as a matter of law. The City contends that the trial court failed to determine that there was sufficient evidence of such a violation to submit the issue to the jury, and there was insufficient evidence as a matter of law.

---

[10]We do not reach the issues of the scope of the issues submitted to the jury, and whether the special verdict form was defective. We note, however, on the first question, that the federal authorities cited by plaintiffs are inapplicable because the Seventh Amendment right to trial by jury does not apply to the states. (See generally, 1 Schwartz and Kirklin, Section 1983 Litigation (2d ed. 1991) § 16.2, p. 838.)

In addition, several of the issues presented are pure issues of law for the court's determination. Plaintiffs argued that the jury should decide the ultimate issue of whether the City's actions were irrational or arbitrary, but the issue was not submitted to the jury. However, the trial court instructed the jury that it would determine whether Stubblefield's civil rights had been violated "based upon [the jury's] determination of these factual issues." The record does not disclose either the basis for the trial court's decision to decide the civil rights issue itself or the trial court's ultimate decision or reasoning in that regard.

On the second question, the form of the verdict, it appears that, although the trial court decided to ask the jury for a special verdict on only the six questions quoted above, it also instructed the jury to decide whether plaintiffs' constitutional rights were violated.

Plaintiffs filed written objections to the court's apparent decision to itself decide whether the City violated plaintiffs' civil rights. The argument on the objections is not in our record.

The narrowness of the questions actually decided by the jury undercut the usual deference to be given to the jury's factual findings. We give no deference to the jury's findings to the extent that the jury purported to decide purely legal issues, and the deference given on factual matters is limited to the narrow questions the jury actually answered.

With regard to equal protection, the City argues that the evidence was insufficient to support a cause of action because there was a rational basis for the actions taken. Under this heading, the City analyzes 20 instances of alleged discriminatory treatment and finds that they were either nonactionable, rationally related to a legitimate state interest, and/or barred by the statute of limitations.

### SUBSTANTIVE DUE PROCESS—VESTED RIGHTS

■ The City's first argument is that plaintiffs had no vested rights to develop their property. Although the proposed use was in accordance with the existing zoning of the property, the City argues that plaintiffs had no right to a particular zoning or to a building permit.

The City cites *Board of Regents* v. *Roth* (1972) 408 U.S. 564 [33 L.Ed.2d 548, 92 S.Ct. 2701]. In that case, the Supreme Court held that an untenured teacher at a state university had no constitutional right to a statement of reasons and a hearing on the university's decision not to hire him for another year. Speaking generally, the court said: "The Fourteenth Amendment's procedural protection of property is a safeguard of the security of interests that a person has already acquired in specific benefits. These interests— property interests—may take many forms. [¶] . . . [¶] Property interests, of course, are not created by the Constitution. Rather, they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as *state law—rules or understandings that secure certain benefits and that support claims of entitlement to those benefits.*" (*Id.* at pp. 576-577 [33 L.Ed.2d at pp. 560-561].) Accordingly, the teacher was held not to have "a *property* interest sufficient to require the University authorities to give him a hearing when they declined to renew his contract of employment." (*Id.* at p. 578 [33 L.Ed.2d at p. 561].)

The City thus frames the issue as to whether plaintiffs had a right to build apartments on their property under state law. It argues that no such right arose under California law. It cites *Avco Community Developers, Inc.* v. *South Coast Regional Com.* (1976) 17 Cal.3d 785 [132 Cal.Rptr. 386, 553 P.2d 546]. In that case, our Supreme Court considered whether a developer had vested rights under California law. ■ The court said: "It has long been the rule in this state and in other jurisdictions that if a property owner has performed substantial work and incurred substantial liabilities in good faith reliance upon a permit issued by the government, he acquires a vested right to complete construction in accordance with the terms of the permit. [Citations.] Once a landowner has secured a vested right the government

may not, by virtue of a change in the zoning laws, prohibit construction authorized by the permit upon which he relied." (*Id.* at p. 791.) After discussing vested rights at common law, the court found that applicable precedent "stand[s] for the proposition that neither the existence of a particular zoning nor work undertaken pursuant to governmental approvals preparatory to construction of buildings can form the basis of a vested right to build a structure which does not comply with the laws applicable at the time a building permit is issued. By zoning the property or issuing approvals for work preliminary to construction the government makes no representation to a landowner that he will be exempt from the zoning laws in effect at the subsequent time he applies for a building permit or that he may construct particular structures on the property, and thus the government cannot be estopped to enforce the laws in effect when the permit is issued." (*Id.* at p. 793.) The court also suggested that other permits, such as a conditional use permit, might create a vested right if they gave substantially the same specificity and definition to a project as a building permit.[11] (*Id.* at pp. 793-794.)

We find *Avco* persuasive and thus conclude that Stubblefield had no vested right to build any particular apartment buildings because it had not applied for or received a building permit for its project.[12] We also agree that, under *Avco*, plaintiffs here had no vested right to develop their property in accordance with the zoning in existence at the time they submitted their review of plans application. (Cf. *Seguin* v. *City of Sterling Heights* (6th Cir. 1992) 968 F.2d 584, 591; *Wedges/Ledges of California, Inc.* v. *City of Phoenix, Ariz.* (9th Cir. 1994) 24 F.3d 56, 62.)

SUBSTANTIVE DUE PROCESS—EVIDENCE OF VIOLATION

In response to the preceding argument, plaintiffs contend that they need not possess a vested right in order to argue their substantive due process claim because they have a due process right to be protected from arbitrary or irrational government actions, or legislative enactments which are not rationally and substantially related to a legitimate governmental interest.

---

[11]The significance of a building permit is that it is approval of a specific structure which complies with the law in effect at the time the permit is issued. (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785, 801.)

[12]*Avco* also rejects the argument, made here, that the developer was entitled to a building permit because the county would have had to issue one upon mere application. The Orange County Building Code codified "the general rule that a builder must comply with the laws which are in effect at the time a building permit is issued, including the laws which were enacted after application for the permit." (*Avco Community Developers, Inc.* v. *South Coast Regional Com., supra,* 17 Cal.3d 785, 795.) Here, the review of plans process was never completed and building permits were not applied for.

 The City contends that plaintiffs did not prove a substantive due process claim under any of the applicable authority.

For purposes of discussion in this section, we accept plaintiffs' premise and assume that plaintiffs did not have to have a vested right in order to assert substantive due process as a protection against irrational and arbitrary actions by the City.[13] "It is by now well established that legislative Acts adjusting the burdens and benefits of economic life come to the Court with a presumption of constitutionality, and that the burden is on one complaining of a due process violation to establish that the legislature has acted in an arbitrary and irrational way." (*Usery* v. *Turner Elkhorn Mining Co.* (1976) 428 U.S. 1, 15 [49 L.Ed.2d 752, 766, 96 S.Ct. 2882].) We therefore consider the sufficiency of the evidence of a substantive due process violation arising from arbitrary or irrational actions.[14]

The City relies on *PFZ Properties, Inc.* v. *Rodriguez* (1st Cir. 1991) 928 F.2d 28, cert. granted, 502 U.S. 956 [116 L.Ed.2d 435, 112 S.Ct. 414], cert. dism. 503 U.S. 257 [117 L.Ed.2d 400, 112 S.Ct. 1151]. In that case, the court considered rejection of a developer's construction permit. Under facts similar to those here, the court found no deprivation of procedural or substantive due process, or equal protection. In rejecting a substantive due process claim based on arbitrary action, the court said: "This Court has repeatedly held, however, that rejections of development projects and refusals to issue building permits do not ordinarily implicate substantive due process. [Citations.] Even where state officials have allegedly violated state law or administrative procedures, such violations do not ordinarily rise to the level of a constitutional deprivation. [Citation.] The doctrine of substantive due process 'does not protect individuals from all [governmental] actions that infringe liberty or injure property in violation of some law. Rather, substantive due process prevents "governmental power from being used for

---

[13]We note, however, that, in some of the cases cited by plaintiffs, a vested right exists by virtue of the ownership of the property itself. The deprivation of all or part of that ownership interest was the subject of a takings claim. (E.g., *Nollan* v. *California Coastal Comm'n* (1987) 483 U.S. 825 [97 L.Ed.2d 677, 107 S.Ct. 3141].) While a takings claim was also made here, the case was not tried on that cause of action.

The City also cites *Zorzi* v. *County of Putnam* (7th Cir. 1994) 30 F.3d 885, 894-895: "A claim based on substantive due process must be based on the deprivation of an underlying protected life, liberty or property interest. [Citations.] 'Accordingly, the absence of any claim by the plaintiff that an interest in liberty or property has been impaired is a fatal defect in her substantive due process argument.' [Citation.] [¶] . . . [¶] . . . [I]n the absence of a life, liberty or property interest Zorzi could be terminated for arbitrary and capricious reasons."

[14]Again we note that neither the trial court nor the jury made a specific finding that the City had acted irrationally or arbitrarily in its actions towards Stubblefield. The judgment only recites that, based on the jury's special verdict, the court finds an unspecified federal civil rights violation.

purposes of oppression," or "abuse of government power that shocks the conscience," or "action that is legally irrational in that it is not sufficiently keyed to any legitimate state interests." ' [Citations.] PFZ's allegations concerning [the agency's] treatment of its proposal simply do not make out a substantive due process violation under this standard." (*Id.* at pp. 31-32; see also *Chiplin Enterprises* v. *City of Lebanon* (1st Cir. 1983) 712 F.2d 1524; *Creative Environments, Inc.* v. *Estabrook, supra,* 680 F.2d 822.)[15]

■ We agree with this characterization of substantive due process in the land-use context. "[P]laintiff has failed to identify any federally protected right of which it was deprived when the Board denied its development application. [¶] . . . [F]ederal courts do not sit as a super zoning board or a zoning board of appeals." (*Arroyo Vista Partners* v. *County of Santa Barbara* (C.D.Cal. 1990) 732 F.Supp. 1046, 1051.)

More fundamentally, we agree with the City's contention that the facts proven here simply do not rise to the level of a substantive due process violation.

In our view, plaintiffs have not, as a matter of law, shown arbitrary or irrational government action. Rather, the record demonstrates actions of the city council that responded to concerns of constituents in the affected area

[15]At oral argument, Stubblefield's counsel argued that the First Circuit cases represent a minority view, out of step with other circuit courts.

All circuits agree that a substantive due process claim can be stated in some circumstances involving controversies similar to this one. Discussions of the differences between circuits in this regard are found in *Pearson* v. *City of Grand Blanc* (6th Cir. 1992) 961 F.2d 1211, 1217-1223, and *Littlefield* v. *City of Afton* (8th Cir. 1986) 785 F.2d 596, 604-607. The latter case supports plaintiffs by stating that the First Circuit is the only circuit that generally refuses to recognize substantive due process claims under section 1983. (785 F.2d at p. 604.)

However, the arbitrary or irrational standard applied here, and/or the First Circuit cases cited above, have been followed by the Second Circuit in *RRI Realty Corp.* v. *Inc. Village of Southampton* (2d Cir. 1989) 870 F.2d 911, 915, and *Sullivan* v. *Town of Salem* (2d Cir. 1986) 805 F.2d 81, 82; the Third Circuit in *Pace Resources, Inc.* v. *Shrewsbury Tp.* (3d Cir. 1987) 808 F.2d 1023, 1036; the Fourth Circuit in *Scott* v. *Greenville County* (4th Cir. 1983) 716 F.2d 1409, 1419, and *Gardner* v. *Baltimore Mayor & City Council* (4th Cir. 1992) 969 F.2d 63, 68; the Fifth Circuit in *Shelton* v. *City of College Station* (5th Cir. 1986) 780 F.2d 475, 482; the Sixth Circuit in *Pearson* v. *City of Grand Blanc, supra,* 961 F.2d 1211, 1217-1223, and *Curto* v. *City of Harper Woods* (6th Cir. 1992) 954 F.2d 1237; the Seventh Circuit in *Albery* v. *Reddig* (7th Cir. 1983) 718 F.2d 245, 249, 251; the Eighth Circuit in *Chesterfield Dev.* v. *City of Chesterfield* (8th Cir. 1992) 963 F.2d 1102, 1104, and *Littlefield* v. *City of Afton, supra,* 785 F.2d 596, 604-607; and the Ninth Circuit in *Southern Pacific* v. *City of Los Angeles* (9th Cir. 1990) 922 F.2d 498, 507.

See, also, *Rutherford* v. *State of California* (1987) 188 Cal.App.3d 1267, 1286-1288 [233 Cal.Rptr. 781]. For further discussion of differences between circuits in the 42 United States Code section 1983 land-use litigation context, see 1 Schwartz and Kirklin, Section 1983 Litigation, *supra,* section 3.14, pages 213-219.

and other political concerns. Specifically, the alleged vendetta of Councilman Marks against the project has not been shown to be an arbitrary and irrational action as a matter of substantive due process. It is not uncommon or unusual for a legislator to oppose a project and to use all means within his or her power to defeat it. After all, a legislator is supposed to respond to the concerns of his or her constituents, and there is ample evidence in the record here that persons living in the vicinity of the project were concerned about it. Whether their concerns were proper or justified is not the issue here. The point is that their elected representative decided to oppose the project, and did so vigorously. ■ "The opinion of area residents concerning neighborhood preservation is an appropriate factor for consideration in zoning decisions." (*Nelson* v. *City of Selma* (9th Cir. 1989) 881 F.2d 836, 840.)

■ The actions of the city council were also proper. A legislative body is generally not bound by the actions of its predecessors. Accordingly, it may amend zoning, general plan, and other provisions applicable to a property without incurring liability.[16] While arbitrary zoning actions directed at a specific property may be invalidated (*Arnel Development Co.* v. *City of Costa Mesa* (1981) 126 Cal.App.3d 330 [178 Cal.Rptr. 723]), the actions taken here were general in nature. For example, the R-3 ordinance that was amended in October 1986, applied to all multifamily housing units in the City. The moratorium imposed as a result of the unrelated lawsuit affected all foothill properties and 40 or 50 proposed projects north of a certain line. The City's refusal to allow the project to be grandfathered resulted in the project being subject to the same rules as all other properties covered by the revised R-3 ordinance. In short, we find a rational basis for the City's actions. (*Greenbriar, Ltd.* v. *City of Alabaster, supra,* 881 F.2d 1570, 1577; *Arroyo Vista Partners* v. *County of Santa Barbara, supra,* 732 F.Supp. 1046, 1054.)

In *Jackson Court Condominiums* v. *City of New Orleans* (5th Cir. 1989) 874 F.2d 1070, 1077, the court said: " 'We hold that the outside limit upon a state's exercise of its police power and zoning decisions is that they must have a rational basis.' [Citation.] The key to such an inquiry is whether the question is 'at least debatable.' [Citation.] Those challenging a legislative decision 'must convince the court that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' " Accordingly, the court upheld an interim moratorium on time share developments in residential areas because the question was one of legitimate and debatable concern. More generally,

---

[16]As noted above, the inverse condemnation causes of action in Stubblefield I were not tried.

we agree with *Creative Environments, Inc.* v. *Estabrook, supra,* 680 F.2d 822: "Plaintiffs would thus have us rule that the due process clause to the United States Constitution was violated when Bolton's Planning Board, for the purpose of protecting what it viewed as the town's basic character, openly interpreted state subdivision laws and a state court decision in ways which frustrated plaintiffs' large-scale housing development of a particular design. [¶] Such a claim is too typical of the run of the mill dispute between a developer and a town planning agency, regardless of CEI's characterizations of it and of defendants' alleged mental states, to rise to the level of a due process violation. The authority cited by CEI, as well as other cases, all suggest that the conventional planning dispute—at least when not tainted with fundamental procedural irregularity, racial animus, or the like—which takes place within the framework of an admittedly valid state subdivision scheme is a matter primarily of concern to the state and does not implicate the Constitution. This would be true even were planning officials to clearly violate, much less 'distort' the state scheme under which they operate. . . . It is not enough simply to give these state law claims constitutional labels such as 'due process' or 'equal protection' in order to raise a substantial federal question under section 1983. As has been often stated, '[t]he violation of a state statute does not automatically give rise to a violation of rights secured by the Constitution.' [Citations.] In short, we see nothing in the present case to distinguish it sufficiently from the usual land developer's claim under state law to warrant recognition of a federal constitutional question. CEI may quite possibly have state law claims on the facts alleged. If so, there appear to be adequate state law remedies to vindicate these claims without resort to a federal court." (*Id.* at pp. 832-833, fns. omitted.)

In this case, the state law remedies are also adequate. We are reluctant to minutely scrutinize the legislative processes of the City in the manner proposed by plaintiffs. It is sufficient that those processes are rational, and not arbitrary or irrational. "If we find that the rational relation of the zoning actions to legitimate governmental interests is at least fairly debatable, the action must be upheld." (*Nelson* v. *City of Selma, supra,* 881 F.2d 836, 839.)

We so find. This is an ordinary dispute between a developer and a municipality and we conclude that the claims asserted simply do not qualify as deprivations of substantive due process. (*Greenbriar, Ltd.* v. *City of Alabaster, supra,* 881 F.2d 1570, 1579-1580; *Kawaoka* v. *City of Arroyo Grande* (9th Cir. 1994) 17 F.3d 1227, 1234, 1238.)

### EQUAL PROTECTION—RATIONAL BASIS

The City relies on the general principle stated in *Kadrmas* v. *Dickinson Public Schools* (1988) 487 U.S. 450, 457-458 [101 L.Ed.2d 399,

409, 108 S.Ct. 2481]: "Unless a statute provokes 'strict judicial scrutiny' because it interferes with a 'fundamental right' or discriminates against a 'suspect class,' it will ordinarily survive an equal protection attack so long as the challenged classification is rationally related to a legitimate government purpose." Under this test, a statute will be upheld if it bears a rational relation to a legitimate government objective. Specifically, the court said: "Social and economic legislation like the statute at issue in this case, moreover, 'carries with it a presumption of rationality that can only be overcome by a clear showing of arbitrariness and irrationality.' [Citations.] '[W]e will not overturn such a statute unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the legislature's actions were irrational.' [Citation.] In performing this analysis, we are not bound by explanations of the statute's rationality that may be offered by litigants or other courts. Rather, those challenging the legislative judgment must convince us 'that the legislative facts on which the classification is apparently based could not reasonably be conceived to be true by the governmental decisionmaker.' [Citation.]" (*Id.* at pp. 462-463 [101 L.Ed.2d at p. 412].)

In the land-use context, the City cites *Greene* v. *Town of Blooming Grove* (2d Cir. 1989) 879 F.2d 1061. In that case a zoning classification was challenged under Unites States Code section 1983. In rejecting an equal protection argument, the court held that the zoning district was rationally related to legitimate state interests. The court said: "Generally a municipal zoning ordinance is presumed [to] be valid [citation], and will not be held unconstitutional if its wisdom is at least fairly debatable and it bears a rational relationship to a permissible state objective." (879 F.2d at p. 1063.)

█ In our view, there was nothing arbitrary or unreasonable in the zoning actions taken here. The revised R-3 multifamily zoning ordinance applied to all multifamily housing in the City. The urgency ordinance applied to all development applications pending at the time it was adopted. The moratorium ordinance applied to all foothill property north of a specified line. The general plan revisions affected all property in the City, while the hillside provisions were based on the slope percentages. These were all rational classifications.[17]

Plaintiffs argued that their property was unique and failed to show that they were treated differently from other landowners similarly situated. (*Madarang* v. *Bermudes* (9th Cir. 1989) 889 F.2d 251, 253; *Craft* v. *Wipf* (8th

---

[17]Nothing in this opinion determines the issues as to the validity of the general plan amendments which imposed the limitations on hillside construction. These issues, including inverse condemnation issues, are still pending in Stubblefield II.

Cir. 1987) 836 F.2d 412, 418; *Yale Auto Parts, Inc.* v. *Johnson, supra,* 758 F.2d 54, 61.) "In order to prevail, the [plaintiff] must make a showing that a class that is similarly situated has been treated disparately." (*Christian Gospel Church* v. *San Francisco* (9th Cir. 1990) 896 F.2d 1221, 1225.)

The City also cites *Trafford* v. *Penno* (D.R.I. 1992) 800 F.Supp. 1052, 1057: "Proving an actual deprivation of equal protection rights in a dispute between a developer and a town planning agency is a daunting task. First, Plaintiff must prove that he was actually treated differently than other developers similarly situated. Absent proof of differing treatment, an equal protection claim must fail."

As noted above, plaintiffs asserted some 13 instances of allegedly discriminatory treatment. Having reviewed the cited instances, we find them insufficient to support a denial of equal protection claim.[18] While it may fairly be said that certain actions of the city council, specifically including certain actions of Councilman Marks, were taken with the Stubblefield project in mind, and were taken for the purpose of blocking the project, the motive of the legislators is generally irrelevant.[19] (*Hancock Industries* v. *Schaeffer* (3d Cir. 1987) 811 F.2d 225, 237.) As *Hancock* states: "If the legislative determination that its action will tend to serve a legitimate public purpose 'is at least debatable', the challenge to that action must fail as a matter of law." (*Id.* at p. 238.)

Thus, even if, as the jury found, the actions of the City were motivated by the purpose of intending to discriminate against Stubblefield, an equal protection claim has not been shown. "When there is insufficient evidence of racial discrimination, we review the City's actions to determine whether [plaintiffs'] property has been treated differently from similarly situated property and whether there is any rational basis for such treatment. [Citation.] [¶] [Plaintiffs'] equal protection claim must fail because there is no

---

[18]In the original complaint, plaintiffs alleged, as the basis for their equal protection claim, that the City's actions were based on discrimination "based on socio-economic status and on the basis of racial or ethnic origins of the prospective tenants." These allegations were not proven at trial. The application defined the project as an upscale multifamily community. Mr. Stubblefield testified that the project would be a high rent apartment project but, because of requirements of project financing, 20 percent of the apartments would be set aside for low- and moderate-income families.

[19]Without adopting the City's reasoning on the specific instances cited by plaintiff, we note that a number of the actions were initiated or taken by Councilman Marks in his efforts to oppose the project. We find nothing arbitrary or irrational in Councilman Mark's opposition to the project. Thus the facts that the city council had a meeting on the project at Sturges Auditorium, or that Councilman Marks mailed out letters to his constituents opposing the project are constitutionally insignificant, even if the city council had not previously held such a meeting, and even if Councilman Marks had never sent out letters opposing any other project. Such activities merely represent the democratic process at work.

evidence in the record that property similar to the [plaintiffs] was treated differently. Unfortunately for the [plaintiffs], it may be impossible to provide this evidence, as the [plaintiffs'] land . . . [is] in fact unique . . . . [¶] In the end, even if the [plaintiffs] were singled out for different treatment, the City has provided a rational explanation for why the general plan treats the [plaintiffs'] property as it does." (*Kawaoka* v. *City of Arroyo Grande*, *supra*, 17 F.3d 1227, 1240.)

None of the actions taken by the city council, on their face, applied to this project alone. The regulation of foothill property, including the apartment projects proposed here, is clearly a legitimate public purpose. This is particularly true in this case, since the environmental questions raised by opponents of the project have never been answered. Zoning regulation of multifamily apartment units is unquestionably a legitimate public purpose. The classifications adopted by the city council were clearly related to that purpose and we find no substantial basis for plaintiffs' equal protection challenge.

### OTHER APPEALS AND ISSUES

In view of our decision that the City's motion for judgment notwithstanding the verdict should have been granted, we need not discuss the other issues. Since plaintiffs are not the prevailing parties, the order granting interim attorney fees to plaintiffs must also be reversed.

### DISPOSITION

The judgment is reversed. The order dated June 10, 1991, denying the City's motion for judgment notwithstanding the verdict is reversed. The order granting interim attorney fees to plaintiffs, filed August 19, 1991, is reversed.

Plaintiffs' notice of appeal filed July 9, 1991, and plaintiffs' notice of cross-appeal dated July 29, 1991, are dismissed as moot.

Each party is to bear its own costs on appeal.

Dabney, Acting P. J., and Richli, J., concurred.

A petition for a rehearing was denied February 23, 1995, and the petition of plaintiffs and appellants for review by the Supreme Court was denied April 20, 1995. Arabian, J., was of the opinion that the petition should be granted.