[No. F039948. Fifth Dist. Nov. 20, 2003.]

GENESIS ENVIRONMENTAL SERVICES, Plaintiff and Appellant, v. SAN JOAQUIN VALLEY UNIFIED AIR POLLUTION CONTROL DISTRICT, Defendant and Respondent.

598

## COUNSEL

Law Offices of Ralph B. Wegis, Ralph B. Wegis, Michelle D. Palla and Barry Rosenberg for Plaintiff and Appellant.

Clifford & Brown, Patrick J. Osborn and T. Mark Smith for Defendant and Respondent.

## OPINION

**CORNELL, J.**—This appeal involves a general demurrer sustained without leave to amend and raises the question of whether the allegations made were sufficient to state a cause of action under any legal theory. Appellant, Genesis Environmental Services (Genesis), alleges that the negligence of the respondent, San Joaquin Valley Unified Air Pollution Control District (the District), prevented it from remaining eligible to pursue the business of testing emissions for companies and other sources subject to mandatory emissions testing. The District contends it owed no duty to see that Genesis remained eligible and it is immune from liability for negligence. In addition to the negligence theories, we consider whether the allegations state a violation of Genesis's constitutional right to equal protection.

We conclude Genesis's allegations regarding the unequal application of certain guidelines state a violation of the equal protection clause of the Fourteenth Amendment under the standards for a claim by a "class of one" set forth in *Village of Willowbrook v. Olech* (2000) 528 U.S. 562 [145 L.Ed.2d 1060, 120 S.Ct. 1073] (*Olech*). Therefore, Genesis has stated a cause

of action under section 1983 of title 42 of the United States Code. Accordingly, we reverse the judgment and remand the matter for further proceedings.

## FACTUAL AND PROCEDURAL SUMMARY

In California, parties responsible for major and certain other stationary sources of air pollution generally are required by federal and state law to obtain a permit and meet specified emission standards. Compliance with emission standards is monitored through mandatory testing conducted by (1) the California Air Resources Board (CARB), (2) an independent contractor acting on behalf of CARB, or (3) an independent tester requested by the enterprise, provided certain requirements are met. If a contractor wishes to conduct compliance source testing on behalf of CARB pursuant to California Code of Regulations, title 17, sections 91200–91220, the contractor must obtain CARB approval.

In addition to the regulations adopted by CARB concerning independent contractors and source testing, guidelines adopted by the District include information about the requirements applicable to independent contractors. These "Source Test Guidelines" approved May 4, 1998 (Guidelines),[1] also included information on the formulae for emission calculations and the policies for conducting tests that deviate from standard methods.

The Guidelines state that CARB "certifies contractors to conduct source tests [using] CARB and EPA emission test methods. Contractors must be certified by CARB prior to conducting CARB test methods and other related EPA tests within the District. Contractors wishing to have their test protocols and test results accepted by the District must be CARB certified in accordance with the criteria specified in Appendix A."

Table 1 of Appendix A of the Guidelines identifies the test methods that require CARB certification. Table 2 of Appendix A indicates the test methods to be used in testing for specific pollutants.

Genesis participated in the independent contractor program and tested pollutant levels in emissions from stationary sources on behalf of the District[2] since 1987.

---

[1] The Guidelines are set forth in an 18-page document and are included in the appellate record as part of the District's request to the superior court for judicial notice.

[2] "The District is composed of Fresno County, a portion of Kern County, Kings County, Madera County, Merced County, San Joaquin County, Stanislaus County, and Tulare County. The eight former County air pollution management agencies merged to form the unified Valley-wide District in 1992." (64 Fed.Reg. 51493 (Sept. 23, 1999), fn. omitted.) Kern County is divided along the ridge line of the Sierra Nevada and Tehachapi Mountain Ranges. (66 Fed.Reg. 56476, 56477, fn. 1 (Nov. 8, 2001).)

CARB publishes an alphabetized list of independent contractors it has approved pursuant to California Code of Regulations, title 17, section 91207. Lists dated September 11, 2000, and November 15, 2000, included Genesis and indicated that (1) Genesis was approved for Method 1 and Method 2, and (2) each approval would expire on June 30, 2001. The September 21, 2001, list of independent contractors approved by CARB did not include Genesis.[3]

On September 26, 2000, Chris Addis was informed that Genesis would no longer be allowed to perform emission testing for the District because Genesis did not meet the local District's testing certification requirements. When Chris Addis spoke by telephone to the District's air quality inspector, Harvey Lopez, demanding evidence to substantiate the inability of Genesis to perform source tests locally, Mr. Lopez explained that the District's policies were not public information and refused to provide Chris Addis with a copy of the District's guidelines.

In November 2000, Genesis filed its initial complaint against the District. On June 28, 2001, after the parties entered a stipulation, Genesis filed a first amended complaint (FAC) for damages against the District. The FAC alleged negligent and careless mismanagement of the District's pollutant emissions testing program and policies.

The FAC specifically alleges that the District oversees and audits compliance source testing to ensure that permitted sources and emission control equipment meet federal, state and local rules. It employs properly educated, trained, credentialed, certified and responsible personnel to (i) oversee, supervise and audit compliance of source testing, (ii) witness source testing performed by independent testers, such as Genesis, (iii) enforce compliance with source test standards, and (iv) ensure independent testers meet the requirements for source test reporting and test methodologies.

The FAC also alleges that the District had a legal duty to use reasonable care in staying informed and implementing and overseeing the independent contractor program, and a breakdown in the operations of the District and its administration of its policies occurred such that the District could not carry out its ministerial duties. This resulted in certain participants who had been in compliance with all of the District's imposed guidelines arbitrarily being denied, without notice or warning, the opportunity to continue to perform source testing for their clients, while other participants in the program that were cited for the same type of noncompliance were allowed to continue testing until they could validate compliance. The District knew, or should have known, that the emissions testing program was mismanaged because the

---

[3] The District's request for judicial notice included three of these lists.

District had failed properly to supervise and train the individuals who oversaw the independent contractor program so as to place Genesis and other participants in a vulnerable position. This failure properly to administer and manage the District's programs caused Genesis to sustain damages.

The District demurred to the FAC on the grounds that the FAC did not allege a statutory basis for liability against the District and, as a public entity, the District was immune from liability. The trial court sustained the demurrer on the ground that Genesis failed to allege a statutory basis for liability on the part of the District, granted leave to amend, and otherwise overruled the demurrer.

Genesis filed a second amended complaint (SAC) that was similar to the FAC and added the following: "[Genesis] brings this action against the DISTRICT for damages under the California Tort Claims Act (Gov. Code, Section 810 et seq.), Government Code Section 815.2, and Civil Code Section 1714(a)." The SAC sought special and general damages according to proof, costs of suit, and such other relief as was proper under the circumstances.

In paragraph 10 of the SAC, Genesis alleged that, as a result of the District's administration of the source testing program, "certain participants, including [Genesis], who had been in compliance with all of the DISTRICT's imposed guidelines, . . . arbitrarily, and without notice or warning, [were] denied the opportunity to continue to perform source testing for [their] clients pursuant to the DISTRICT program, while other participants in said program, cited for non-adherence and/or non-compliance with the DISTRICT's rigid standard as aforementioned, [were] allowed to continue testing in an effort to, and until said participants could, validate compliance with the permit requirements for controlling air emissions."

The District again demurred on the ground the SAC, "and each and every cause of action alleged therein, does not state a cause of action."[4] The District argued that the SAC failed to state facts sufficient to constitute a cause of action, immunities protected the District, and the statutes referenced in the SAC did not create a basis for liability on the part of the District.

On November 26, 2001, the trial court issued a minute order sustaining the demurrer without leave to amend. An order and judgment thereon was filed on December 7, 2001. Genesis filed a motion for reconsideration on December 21, 2001, which addressed its ability to plead a statutory basis for liability

---

[4] Under Code of Civil Procedure section 430.10, subdivision (e), a party may demur to a pleading on the ground that the "pleading does not state facts sufficient to constitute a cause of action." (See Code Civ. Proc., § 430.60 [specification of grounds for demurrer].)

and allege a duty owed to it by the District. In connection with this motion, Genesis filed declarations from each of its owners, Chris Addis and Anne Addis.

The trial court denied the motion for reconsideration because no satisfactory reason was given for why the new matter could not have been presented earlier and because California's Administrative Procedures Act did not impose a duty on the District in favor of Genesis.

## DISCUSSION

### I. *Standard of Review*

In an appeal from a judgment dismissing an action after a general demurrer is sustained without leave to amend, our Supreme Court has imposed the following standard of review. "The reviewing court gives the complaint a reasonable interpretation, and treats the demurrer as admitting all material facts properly pleaded. [Citations.] The court does not, however, assume the truth of contentions, deductions or conclusions of law. [Citation.] The judgment must be affirmed 'if any one of the several grounds of demurrer is well taken. [Citations.]' [Citation.] However, it is error for a trial court to sustain a demurrer when the plaintiff has stated a cause of action under any possible legal theory. [Citation.] And it is an abuse of discretion to sustain a demurrer without leave to amend if the plaintiff shows there is a reasonable possibility any defect identified by the defendant can be cured by amendment. [Citation.]" (*Aubry v. Tri-City Hospital Dist.* (1992) 2 Cal.4th 962, 966–967 [9 Cal.Rptr.2d 92, 831 P.2d 317]; accord, *Zelig v. County of Los Angeles* (2002) 27 Cal.4th 1112, 1126 [119 Cal.Rptr.2d 709, 45 P.3d 1171] [demurrer sustained without leave to amend upheld; plaintiffs were unable to state a claim against public entities under direct liability theories or under the doctrine of respondeat superior].)

Based on this standard of review, our inquiry ends and reversal is required once we determine a complaint has stated a cause of action under any legal theory.

### II. *Supplemental Letter Briefing of Additional Legal Theories*

In light of the lenient standard of review and the admonition that complaints are to be liberally construed,[5] we directed the parties to submit supplemental letter briefs addressing whether the complaint stated, or could

---

[5] Code of Civil Procedure section 452; *City of Pomona v. Superior Court* (2001) 89 Cal.App.4th 793, 800 [107 Cal.Rptr.2d 710].

be amended to state, certain constitutionally based claims. (See Gov. Code, § 68081.) Specifically, we asked whether the facts alleged in the complaint, and the reasonable inferences drawn from those facts, were sufficient to raise violations of (1) equal protection, (2) substantive due process as related to a liberty or property interest, or (3) procedural due process. With respect to the equal protection claim, the parties were directed to "discuss the allegations in paragraph 10 of the [SAC] regarding (i) disparate treatment of plaintiff compared to other participants in the program and (ii) arbitrary action by defendant."

The District asserted in its letter brief that Genesis failed sufficiently to allege any constitutionally based causes of action. Genesis argued in its letter brief that it had alleged sufficient facts to state an equal protection claim and that, if given leave to amend, it could allege facts stating claims under theories of procedural due process and substantive due process.

## III. *Constitutional Claims*

Our analysis of the constitutional theories begins with the text of the federal Constitution. The first sentence of section 1 of the Fourteenth Amendment to the United States Constitution contains the privileges or immunities clause, the due process clause and the equal protection clause: "No State shall make or enforce any law which shall abridge the privileges or immunities of citizens of the United States; nor shall any State deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws."

The federal Civil Rights Act, 42 United States Code section 1983 (section 1983),[6] provides redress for certain deprivations of federal constitutional rights. State courts have jurisdiction[7] to hear cases brought pursuant to section 1983. (*Garcia v. Superior Court* (1996) 42 Cal.App.4th 177, 181 [49 Cal.Rptr.2d 580].) In these cases, state courts must apply federal substantive law. (*Ibid.*)

*The SAC Alleges Facts Sufficient to State an Equal Protection Claim*

The United States Supreme Court recently addressed the issue of pleading a cause of action under the equal protection clause and stated: "Our cases

---

[6] Section 1983 provides, in pertinent part, "Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress . . . ."

[7] This jurisdiction is concurrent with the jurisdiction of federal courts. (*Ochoa v. Superior Court* (1985) 39 Cal.3d 159, 173, fn. 10 [216 Cal.Rptr. 661, 703 P.2d 1].)

have recognized successful equal protection claims brought by a 'class of one,' where the plaintiff alleges that she has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment." (*Olech, supra,* 528 U.S. at p. 564.) In *Olech,* the plaintiff sued the Village of Willowbrook after it required her to grant a 33-foot easement, as opposed to the 15-foot easement required from other property owners, to connect to the Village's water supply. (*Olech, supra,* 528 U.S. at p. 563.) The plaintiff claimed that the Village's demand for an additional easement was "irrational and wholly arbitrary" and was made with the intent to deprive her of her rights or in reckless disregard of her rights. The Supreme Court held that the allegations were sufficient to state a claim under traditional equal protection analysis and did not reach the alternate theory based on the Village's subjective ill will. (*Olech, supra,* 528 U.S. at p. 565.)

Based on *Olech,* which is binding on this court,[8] we conclude an equal protection claim contains the following essential elements: (1) plaintiff was treated differently from other similarly situated persons;[9] (2) the difference in treatment was intentional; and (3) there was no rational basis for the difference in treatment. We also conclude the allegations of paragraph 10 of the SAC, and the reasonable inferences drawn from those allegations and the documents subject to judicial notice, are sufficient to state a cause of action under section 1983 based on a denial of equal protection.

Like the United States Supreme Court in *Olech,* we need not reach the issue of whether Genesis is able to state an equal protection claim based on the alternate theory of the District's subjective ill will. In its letter brief, Genesis claims it could allege (1) collusion between some of its competitors and officials friendly with those competitors, and (2) its exclusion from testing was motivated by a desire to eliminate Genesis as a competitor because it had been a significant factor in reducing the price of testing. If Genesis wishes to pursue a theory that the difference in treatment was based on animus or subjective ill will, then it can seek leave to amend to include this theory, which would be an alternative to the traditional theory already contained in the SAC.

Next, we turn to the District's arguments against the existence of an equal protection claim. Its analysis contains at least three propositions that are not consistent with current law.

---

[8] When applying section 1983, we are bound to follow controlling opinions of the United States Supreme Court on matters of federal constitutional and statutory law. (U.S. Const., art. VI, cl. 2; see *Garcia v. Superior Court, supra,* 42 Cal.App.4th at p. 181.)

[9] The term "person" as used in the equal protection clause of the Fourteenth Amendment includes corporations. (*RK Ventures, Inc. v. City of Seattle* (9th Cir. 2002) 307 F.3d 1045, 1057, fn. 7.) Corporations also are persons whose rights are protected by section 1983. (*RK Ventures, Inc.,* at p. 1057.)

First, the District asserts that Genesis's "equal protection attack must be directed at the classification that the Guidelines create." This statement is contrary to established law. ■ The decision in *Olech* makes clear that a person singled out for different treatment by local authorities may pursue an equal protection claim. Furthermore, in *Olech* the United States Supreme Court recognized that arbitrary discrimination can arise from either (1) the express terms of a statute, or (2) the improper execution of the statute through duly constituted officials or agents. (*Olech, supra,* 528 U.S. at p. 564.) The allegations in paragraph 10 of the SAC present the latter situation. Genesis has alleged that the employees of the District applied the Guidelines in an unequal manner rather than alleging the Guidelines created a classification that was improperly discriminatory.

Second, and in a similar vein, the District contends "even if [Genesis] was singled out for strict enforcement of the Source Test Guidelines, [Genesis] cannot state a claim if there existed a rational basis for [Genesis's] disqualification from the independent contractor program." ■ This contention also is contrary to the principles set forth in *Olech, supra,* 528 U.S. at page 564, which establish that there must be a rational basis for the *difference in treatment* of those similarly situated. In other words, if a rational classification is applied unevenly, the reason for singling out a particular person must be rational and not the product of intentional and arbitrary discrimination. (Cf. *Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1035 [103 Cal.Rptr.2d 711, 16 P.3d 130] [the failure to follow a statute or regulation may amount to deliberate flouting of the law, in violation of substantive due process rights].)[10]

Third, the District challenges the adequacy of the SAC on the ground that Genesis provided no possible rationale of why the District's standards were strictly enforced against it, while other independent contractors were offered a reprieve. To support this challenge, the District relies on pre-*Olech* cases involving the enactment of a zoning ordinance that prevented a developer from building an apartment building (*Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687 [38 Cal.Rptr.2d 413] (*Stubblefield*)) and the denial of a *discretionary* design review permit by the City of Del Mar's design review board (*Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166 [81 Cal.Rptr.2d 324] (*Breneric*)).

The equal protection claim made in *Stubblefield* is distinguishable from the present case because it challenged the validity of a zoning ordinance rather than the improper execution of that ordinance through duly constituted

[10] The "shocks the conscience" standard for arbitrary behavior used in a substantive due process analysis of executive conduct appears to impose less restraint than the equal protection standard for arbitrary or irrational distinctions between similarly situated persons.

officials or agents. (See *Olech, supra,* 528 U.S. at p. 564.) In *Stubblefield,* a city council adopted a zoning ordinance that restricted building on foothill property and developers, who wished to build an apartment complex on land they owned, claimed the ordinance violated their equal protection rights because it prevented their project. That equal protection claim was rejected by Division Two of the Fourth Appellate District because the developers "failed to show that they were treated differently from other landowners similarly situated." (*Stubblefield, supra,* 32 Cal.App.4th at p. 713.) Consequently, the equal protection claim in *Stubblefield* is distinguishable from the allegations made by Genesis, and Genesis should be given the opportunity to prove its allegations of disparate treatment.

Furthermore, we hold the pleading standards set forth in *Breneric* by Division One of the Fourth Appellate District do not apply in this case. In *Breneric,* the review board made esthetic judgments about the harmony and continuity of the proposed design. (*Breneric, supra,* 69 Cal.App.4th at pp. 172–173.) Forming such a judgment under imprecise standards necessarily involved the exercise of discretion. In contrast, there is nothing in the record before us that establishes the District (1) must necessarily exercise a similar degree of discretion when enforcing the rules and regulations applicable to source testers, or (2) has the discretion to choose when to enforce mandatory rules, such as the discretion afforded prosecutors. In these circumstances, when public officials deviate from a mandatory rule, the need for factual allegations explaining the arbitrary or irrational character of the deviation is not necessary.[11] The deviation amounts to a public entity's violating its own rule. Pleading such a violation, along with an allegation that the conduct was arbitrary or that there was no rational basis for the different treatment, adequately apprises the defendant of the issues it is to meet. (See 5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 929, p. 388.)

In addition, requiring a plaintiff to plead factual details that establish a negative, i.e., no rational basis for the difference in treatment, might place the plaintiff in the position of pleading matters beyond its knowledge and ability to find out prior to discovery. For example, Chris Addis asserts he telephoned

---

[11] We specifically have avoided the term "selective enforcement" because of the body of law using this term in the context of prosecutorial discretion. (See *Esmail v. Macrane* (7th Cir. 1995) 53 F.3d 176, 178–179 [discussing two types of selective enforcement and when a particular type violates equal protection]; see generally Vorenberg, *Decent Restraint on Prosecutorial Power* (1981) 94 Harv. L.Rev. 1521.) The equal protection clause historically has granted greater deference to discriminatory decisions by prosecutors who have limited resources with which to prosecute crime than to decisions made by officials in other contexts, such as the land use matter addressed in *Olech.* (See *Harlen Associates v. Inc. Village of Mineola* (2d Cir. 2001) 273 F.3d 494, 500 [in a land use case, the Second Circuit assumed, without holding, that a plaintiff who shows differential treatment under *Olech* must show either the unequal treatment lacked a rational basis or the unequal treatment was motivated by animus].)

the District's air quality inspector and demanded evidence to substantiate Genesis's inability to perform source tests locally. Addis was told that the District's policies were not public information and was refused a copy of the Guidelines. Although Addis eventually obtained a copy of the Guidelines, this exchange illustrates the difficulty in requiring Genesis to plead specific facts explaining why the District lacked a rational basis for treating Genesis differently.

Accordingly, we conclude the allegations in the SAC, and the reasonable inferences drawn from those allegations and the documents subject to judicial notice, are sufficient to state a cause of action under section 1983 based on a denial of equal protection. It follows that the general demurrer should not have been sustained and judgment should not have been entered in favor of the District. Having determined the SAC has stated a cause of action under one legal theory and thus survived the general demurrer, we need not address the sufficiency of the allegations to state any other causes of action, such as negligence, violation of substantive due process, violation of procedural due process, or whether the Guidelines are void to the extent they are inconsistent or in conflict with applicable statutes or with regulations promulgated by CARB.

## DISPOSITION

The judgment is reversed and the matter is remanded to the superior court with directions to vacate its order sustaining the general demurrer without leave to amend and to enter an order denying the demurrer. Genesis shall recover its costs on appeal.

Dibiaso, Acting P. J., and Vartabedian, J., concurred.