Filed 1/30/15  Castlin v. Cate CA1/4

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| ARON D. CASTLIN,<br><br>        Plaintiff and Appellant,<br><br>v.<br><br>M. CATE ET AL.,<br><br>        Defendants and Respondents. | A140895<br><br>(Del Norte County<br>Super. Ct. No. CVUJ111460) |

Plaintiff Aron D. Castlin, a prisoner in the Secured Housing Unit (SHU) at Pelican Bay State Prison (Pelican Bay), appeals an order sustaining defendants' demurrer without leave to amend his civil complaint.  The complaint sought the return of or compensation for property seized from his cell.  The demurrer asserted that the complaint should be dismissed on numerous grounds, including that: 1) the claim for negligent supervision could not be asserted against defendants as they are public employees; 2) the claim for "right to own legal material/property" was not a cognizable cause of action; 3) plaintiff failed to state a claim for access to the courts; and 4) the complaint otherwise failed for uncertainty.  We affirm in part and reverse in part.

## I.  BACKGROUND

Because we are reviewing an order sustaining a demurrer, we are required to accept as true the allegations of facts set forth in plaintiff's complaint.  (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 865.)  Therefore, the facts set forth in this opinion are taken from the allegations in plaintiff's complaint.

1

Plaintiff is a "respected author, anti-imperialist," and self-described, " 'jailhouse lawyer.' "  In December 2007, shortly after his writings "advocating for the release of political prisoners and abolition of prisons began being widely published in anti-imperialist" magazines, plaintiff was moved from the regular SHU to the "Communication Management Unit," also known as the "short corridor."

In December 2008, plaintiff filed a writ of habeas corpus, challenging his no contest criminal conviction as being "in violation of constitutional law as plaintiff was never informed of the direct consequences of having to register as a 'gang offender' " pursuant to Penal Code section 186.30.  The petition was denied on or about September 2009, at which time plaintiff "received representation by human rights attorney Mr. Yavar Hameed of . . . Ontario Canada."  Hameed agreed to "represent plaintiff's interest via investigations and research on his pending habeas corpus, as well as . . . in drafting a class action petition to the United Nations detailing and seeking redress of the inhumane and unconstitutional conditions of plaintiff's confinement."

In November 2009, plaintiff's book, " 'Who Am Eye: A Spoken Word Memoir' " was published.  Plaintiff's poetry was featured both nationally and internationally on radio and in print.  At or about this same time, defendant J. Silveria, a correctional officer assigned to the institution gang investigation unit (IGI), began denying plaintiff correspondence with attorney Hameed.

On January 15, 2010, defendant Silveria, along with defendants D. Milligan, G. Pimentel, and A. Rosenberg, all of whom were correctional officers acting under the supervision of defendants Lieutenant F. Vanderhooven[1] and Lieutenant W. Anthony, who were both assigned to the investigative services unit (ISU), confronted plaintiff in his cell and told him to " 'cuff up' " for a cell search.  When plaintiff asked about the purpose of the search, defendants would not respond except to say " 'investigation into gang activity,' " or " 'cuff up, or we'll remove you.' "  Defendants refused to allow plaintiff to

---

[1]     Although the complaint names "F. Vanderhoofven" as a defendant, the record reflects that the correct spelling of this defendant's last name is "Vanderhooven." Accordingly, we shall refer to this defendant as "Vanderhooven."

observe the search. Instead, he was handcuffed and placed in a locked shower stall, where he had no view of the search of his cell. Defendants seized and removed all plaintiff's "personal property and legal paperwork," leaving him only with his television and some laundry.

Upon being escorted back to his cell, plaintiff discovered a "vague uninformative document," entitled " 'Pelican Bay State Prison, Security Housing Unit Cell Search Receipt,' " which stated that " 'all paperwork removed for review' " by internal affairs. Plaintiff complained about the lack of information and itemization on the receipt, but defendants refused to give him an itemized account of the property taken.

On January 20, 2010, plaintiff went to the prison law library. Upon returning to his housing unit around 1:30 p.m., he was notified by the control booth officer that his property had been returned to the unit. However, because plaintiff was not in the unit, his property was left unattended in the trash/storage room. Plaintiff asked defendant M. Brown, a floor officer who had just begun her shift, whether she had seen his property in the trash/storage room. Defendant Brown told plaintiff that his property was in that room in large garbage bags and that she would "issue it to him" when she had the time. Plaintiff's conversation with defendant Brown took place some time between 1:30 and 1:45 p.m.

Plaintiff's property was not returned to him until about 6:30 p.m. on January 20, 2010, after the evening meal was served, trays were collected, and the garbage was thrown out. Plaintiff's property, which had been put in large plastic garbage bags, was left unattended for five hours in the garbage/storage room. Upon an initial inspection of his property, plaintiff noticed that defendants Silveria, Milligan, Pimentel, and Rosenberg, again had failed to itemize the property that had been confiscated and/or returned. Plaintiff discovered that all of his legal paperwork was missing.

Plaintiff immediately notified defendant Brown that all of his legal paperwork was missing and that the cell search receipt was missing as well. Defendant Brown told plaintiff to address his concerns to defendant Silveria, as he was the one who had left the property in the storage room.

3

On January 30, 2010, plaintiff filed an inmate appeal requesting the return of all of his "legal property." Plaintiff received an informal response on or about February 3, 2010, from Lieutenant Vanderhooven, who stated: " 'Your property was searched and returned to you, including your legal work. No property was retained and no disciplinary report issued.' "

On February 8, 2010, plaintiff requested a formal level review of the informal claim, asserting that the informal review did not address the issues raised, but only served to continue the "pattern of constitutional violations." Thereafter, Lieutenant Anthony interviewed plaintiff and told him that he would locate and return plaintiff's legal property.

On or about April 2, 2010, plaintiff received an "unsatisfactory" Warden level's response from Lieutenant Anthony, which had been authorized by defendants Captain K.L. McGuyer, Associate Warden M.J. Nimrod, and Warden D.G. Adams. Although the response purported to partially grant plaintiff's appeal, plaintiff's complaint was "only half-heartedly investigated or not investigated at all."

On April 18, 2010, plaintiff sought Director's level review of his grievance, requesting the return of his legal property and claiming that the staff at Pelican Bay were "continuing to violate [his] constitutional rights and have denied [him] access to the courts in [his] pending legal matter." Thereafter, on or about July 28, 2010, defendants D. Stark, an appeals examiner at the Inmate Appeals Branch (IAB), and D. Foston, chief examiner at IAB, issued a response in which they "did no investigation into the issues," but "merely reiterated the statements made at the previous levels of review."

## I. DISCUSSION

### A.   *Standard of Review*

" 'On appeal from a dismissal after an order sustaining a demurrer, we review the order de novo, exercising our independent judgment about whether the complaint states a cause of action as a matter of law.' (*Lazar v. Hertz Corp.* (1999) 69 Cal.App.4th 1494, 1501.) ' "We treat the demurrer as admitting all material facts properly pleaded . . . [Citation.] We also consider matters which may be judicially noticed." [Citation.] . . . .'

4

(*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.)" (*Doe v. Albany Unified School Dist.* (2010) 190 Cal.App.4th 668, 674.) When the demurrer is sustained without leave to amend, we review the denial for leave to amend for abuse of discretion. (*Campbell v. Regents of University of California* (2005) 35 Cal.4th 311, 320.)

Under the governing legal principles, "we take as true the well-pleaded factual allegations of the complaint." (*Construction Protective Services, Inc. v. TIG Specialty Ins. Co.*(2002) 29 Cal.4th 189, 193.) We construe the "complaint liberally to attain substantial justice among the parties." (*Long Beach Equities, Inc. v. County of Ventura* (1991) 231 Cal.App.3d 1016, 1024.) Nevertheless, we "may not consider conclusions of fact or law, opinions, speculation or allegations which are contrary either to law or to judicially noticed facts." (*Ibid.*)

**B.      *Writ Relief Regarding Return of Property (First and Second Causes of Action)***

Plaintiff argues that the trial court erred in sustaining the demurrer without leave to amend by failing to recognize that his causes of action for bailment and conversion sought writ relief. It appears, as defendants concede, that plaintiff was seeking writ relief with respect to his bailment and conversion claims. For example, the civil complaint cover sheet states, "Plaintiff seeks specific recovery of Bailed property and order compelling defendants to perform a ministerial duty owed Plaintiff." The face of the attached complaint is also entitled "Complaint Seeking Specific Performance of a Ministerial Duty to Return Property Arising From Bailment."

On appeal, plaintiff contends that the trial court should not have dismissed on the grounds that he failed to comply with the Government Tort Claims act because inmates are not required to file a government tort claim when seeking a writ of mandate for return of property. We, however, review a trial court's decision, not its reasoning. (*Ladas v. California State Auto. Assn.* (1993) 19 Cal.App.4th 761, 769.) Accordingly, we must affirm the trial court's ruling if *any* legal theory would sustain the judgment, provided it does not raise factual issues not presented below. (*City of Claremont v. Kruse* (2009) 177 Cal.App.4th 1153, 1167.)

5

Here, "it does not really matter if plaintiff [] expressly sought a writ of mandate below [and/or the trial court failed to consider it]. '[W]e are not limited to plaintiff['s] theory of recovery in testing the sufficiency of [his] complaint against a demurrer, but instead must determine if the *factual* allegations of the complaint are adequate to state a cause of action under any legal theory. The courts of this state have . . . long since departed from holding a plaintiff strictly to the 'form of action' he has pleaded and instead have adopted the more flexible approach of examining the facts alleged to determine if a demurrer should be sustained.' (*Barquis v. Merchants Collection Assn.* (1972) 7 Cal.3d 94, 103.) 'As against a general demurrer, . . . it is unimportant that plaintiff's pleading was not in form a petition for mandamus . . . . All that is required is that plaintiff state facts entitling him to some type of relief, and if a cause of action for mandamus . . . has been stated, the general demurrer should have been overruled.' (*Boren v. State Personnel Board* (1951) 37 Cal.2d 634, 638.)" (*Doe v. Albany Unified School Dist., supra,* 190 Cal.App.4th at pp. 682-683.) Accordingly, we turn to the question of whether the complaint states a claim for traditional mandamus.

Preliminarily, we agree with plaintiff that if the conditions for relief are otherwise adequately shown, writ of mandate is an appropriate remedy in this case. As noted in *Escamilla v. Department of Corrections & Rehabilitation* (2006) 141 Cal.App.4th 498 (*Escamilla*), a petition for writ of mandate is an appropriate vehicle to compel the return of personal property wrongfully withheld by state custodial officers in violation of a statutory duty. (*Id.* at pp. 509-511, fn. 10.) Additionally, as background to our consideration of the issues in this case, we recognize the principle embodied in Penal Code section 2600 that "[a] person sentenced to imprisonment in a state prison . . . may during that period of confinement be deprived of such rights, and only such rights, as is reasonably related to legitimate penological interests."[2]

---

[2] Penal Code section 2601 elaborates that "[s]ubject only to the provisions of that section, each person described in Section 2600," shall have certain retained rights, including the right to private property. (Pen.Code, § 2601, subd. (a).)

Pursuant to Code of Civil Procedure section 1085, subdivision (a), "[a] writ of mandate may be issued by any court to any inferior tribunal, corporation, board, or person, to compel the performance of an act which the law specially enjoins, as a duty resulting from an office, trust, or station . . . ." The substantive requirements for issuance of the writ are (1) a clear, present and usually ministerial duty of the defendant to do an act which the law specially enjoins, and (2) a substantial beneficial interest of the plaintiff in the performance of that duty. (*City of Dinuba v. County of Tulare* (2007) 41 Cal.4th 859, 868.) "A ministerial act is one that a public functionary ' " 'is required to perform in a prescribed manner in obedience to the mandate of legal authority,' " ' without regard to his or her own judgment or opinion concerning the propriety of such act." (*Coachella Valley Unified School Dist. v. State of California* (2009) 176 Cal.App.4th 93, 113.) Additionally, "[m]andamus is an appropriate remedy to compel the exercise of discretion by a government officer, but does not lie to control the exercise of discretion unless under the facts, discretion can be exercised in only one way. [Citations.]" (*Pacific Bell v. California State & Consumer Services Agency* (1990) 225 Cal.App.3d 107, 118.)

We now turn to the particular issue of whether defendants had a duty to return plaintiff's property. On this question, plaintiff argues that *Escamilla, supra,* 141 Cal.App.4th 498 is controlling. In *Escamilla,* after a prison riot, an inmate was placed in the SHU. (*Id.* at p. 502.) The inmate had placed his personal clothing, watch, and items he had just purchased from the canteen into bags to be kept until he was released from the SHU. (*Ibid.*) When he was released from the SHU, his items were not returned to him. (*Ibid.*) After the inmate's appeals seeking $255 compensation for the lost items were denied, he filed a writ of habeas corpus, which the trial court granted. (*Id.* at pp. 504-505.)

On appeal, the court determined the appropriate writ to address the situation was a writ of mandate, rather than habeas corpus. (*Escamilla, supra,* 141 Cal.App.4th at pp. 505-508.) It concluded a claim for return of specific property held by a public entity as bailee did not require presentation of a government claim prior to seeking judicial relief by way of mandate, because it was not a claim for money or damages to which the

7

claim filing requirement applied. (*Id.* at p. 506.) In so holding, the court quoted *Minsky v. City of Los Angeles* (1974) 11 Cal.3d 113, 121, which stated: " '[T]he government in effect occupies the position of a bailee when it seizes from an arrestee property *that is not shown to be contraband*. [Citation.] The arrestee retains his right to eventual specific recovery, whether he seeks to regain tangible property like an automobile, ring, wallet or camera, or whether he seeks to recover a specific sum of money which, under general constructive trust principles, is traceable to property within the possession of the defendant. [Citations.]' [Citation.]" (*Escamilla, supra,* 141 Cal.App.4th at p. 506, italics added.)

Defendants, on the other hand, argue that *Flores v. Department of Corrections and Rehabilitation* (2014) 224 Cal.App.4th 199, 208 (*Flores*), is dispositive of the issues on appeal. In *Flores,* the court held that prison officials did not abuse their discretion in refusing to return a contraband television to an inmate. In so holding, it distinguished *Escamilla,* explaining that in Escamilla "the property . . . was not [confiscated] as contraband; it was merely . . . held for safekeeping." (*Flores, supra,* 224 Cal.App.4th at p. 208.) In *Flores*, in contrast, "plaintiff's property was not simply taken from him for safekeeping when he was arrested or placed in segregated housing; it was seized as contraband. Thus, in taking possession of plaintiff's property, defendants were not acting as bailees charged with an obligation to safely keep and return the television." (*Ibid.*) In reaching this conclusion, the court noted that the plaintiff had not alleged any "facts showing that the television was not contraband, for example, that it was properly engraved with plaintiff's name . . . or that he had proof sufficient to establish his ownership, such as a receipt for its purchase bearing a serial number matching the serial number on the television." (*Ibid.*)

Contrary to the respective positions of the parties, the facts of the instant case do not squarely align with either *Escamillia* or *Flores*. For example, unlike in *Escamilla*, the property at issue was not simply taken from plaintiff for safekeeping. Rather, the complaint states that it was "seized" as part of an " 'investigation into gang activity.' " However, here, unlike in *Flores*, plaintiff alleged facts showing that the property seized

8

was not actually contraband. The fact that defendants attempted to return the seized property to plaintiff and that they did not take any disciplinary measures against plaintiff based on the seized property suggests a reasonable inference that the property confiscated was later *shown not to be contraband*. This inference militates toward finding the instant case more closely aligned with *Flores*.

Here, it appears that the confiscation of plaintiff's property began as an authorized seizure of suspected contraband. However, once defendants determined that the seized property was not contraband they effectively became bailees of plaintiff's property and, as such, they had a duty to safely keep and return plaintiff's personal property. (*Escamilla, supra,* 141 Cal.App.4th at p. 510, fn. 10.) Plaintiff contends that the defendants either negligently and/or intentionally lost or destroyed his legal property. Consequently, plaintiff has demonstrated that his claims for bailment (first cause of action) and conversion (second cause of action) are proper ones to pursue by petition for writ of mandate.

## C.      *Remaining Causes of Action*

### 1.      *Right to Own Legal Property (Third Cause of Action)*

In his third cause of action, plaintiff purports to assert a claim of interference with his "right to own legal property." In support of this claim, plaintiff relies on various parts of the California Code of Regulations (see Cal.Code.Regs., tit. 15, §§ 3161, 3190, 3191, 3193) as well as the Fourth, Fifth, Eighth, and Fourteenth Amendments to the United States Constitution.

Plaintiff characterizes his claim as one for the deprivation of his personal property without due process; that is that he has been wrongly denied ownership and possession of legal materials necessary for his pending criminal appeal. Interests protected by the due process may arise from two sources—the Due Process Clause itself and laws of the states. (*Meachum v. Fano* (1976) 427 U.S. 215, 223-227.) The United States Constitution does not create a protected interest in property. (*Board of Regents of State Colleges v. Roth* (1972) 408 U.S. 564, 577.) Rather, protected property interests "stem

9

from an independent source such as state law—rules or understanding that secure certain benefits and that support claims of entitlement to those benefits." (*Ibid.*)

Because there is no fundamental right to own personal property in prison, a due process right to such ownership would be created only by virtue of state statute or regulation. State law creates a protected interest if mandatory language in the law substantively restricts the discretion of state officials. (*Hewitt v. Helms* (1983) 459 U.S. 460, 472 overruled in part on other grounds in *Sandin v. Conner* (1995) 515 U.S. 472, 482-484.) The state regulations at issue do not contain such mandatory directives, however. For example, California Code of Regulations, title 15, section 3161 provides: "Inmate-owned legal materials/documents, law books and papers shall be limited to the availability of space authorized by section 3190(b) for personal property in the inmate's quarters/living area except as specified in this section. Inmates may possess up to one cubic foot of legal materials/documents related to their active cases, in excess of the six cubic feet of allowable property in their assigned quarters/living area. Legal materials/documents, law books and papers in excess of this limitation shall be disposed of pursuant to section 3191(c). Inmates may request the institution/facility store excess legal materials/documents related to their active cases(s) when such materials/documents exceed this one cubic foot additional allowance. Inmate-owned law books in excess of the additional allowance shall not be stored by the institution/facility."

Equally inapt are the provisions addressing the general policies of the California Department of Corrections and Rehabilitation (CDCR) regarding personal property possessed by inmates. (See Cal.Code Regs., tit. 15, § 3190 [General Policy (specifying "state-issued property items, and authorized personal/religious property items")]; § 3191 [Property Registration and Disposition (specifying procedure for "[r]egisterable personal property")]; § 3193 [Liablity (specifying instances when department will be liable for loss or destruction of inmate personal property)].)

The language of these regulations does not create a legitimate claim of entitlement for the "right to own legal property." Therefore, a demurrer did lie as to plaintiff's right to own property claim. We will therefore affirm the decision to sustain the demurrer.

10

Next, we must determine if plaintiff must be granted leave to amend this claim. If "an amendment *could* cure the defect," then leave to amend must be granted. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081, italics added.) That is, "unless the complaint shows on its face that it is incapable of amendment," leave to amend must be granted. (*Lee v. Los Angeles County Metropolitan Transportation Authority* (2003) 107 Cal.App.4th 848, 854, italics omitted; accord *Berkeley Police Assn. v. City of Berkeley* (1977) 76 Cal.App.3d 931, 942.) Here, the defect is that plaintiff did not cite to any applicable law supporting his claim of entitlement of the right to own property. Although the specific regulations cited by plaintiff do not give rise to a cause of action, pursuant to Penal Code section 2601, subdivision (a), prisoners do retain the general right to own personal property while in prison. Accordingly, as the complaint is clearly capable of amendment by adding a claim under Penal Code section 2601, we direct the court to grant plaintiff leave to amend the complaint as to his right to own property cause of action.

### 2. *Right of Access to the Court (Fourth Cause of Action)*

Plaintiff claims that staff failed to return his confiscated legal materials, which had the effect of violating his rights of access to the courts.

Prisoners have a constitutional right to access the courts. (*Lewis v. Casey* (1996) 518 U.S. 343, 346.) There are at least two categories of suits prisoners bring to enforce this right. (See *Christopher v. Harbury* (2002) 536 U.S. 403, 412-414.) "In the first are claims that systemic official action frustrates a plaintiff or plaintiff class in preparing and filing suits at the present time." (*Id.* at p. 413.) "The second category covers claims not in aid of a class of suits yet to be litigated, but of specific cases that cannot now be tried . . . no matter what official action may be in the future." (*Id.* at pp. 413-414, fn. omitted.) In either type of suit, the prisoner must plead facts demonstrating that the underlying action frustrated by prison officials was " 'nonfrivolous' " or " 'arguable.' " (*Id.* at p. 415.) Moreover, when asserting claims in the second category, the complaint must identify "a remedy that may be awarded as recompense . . . ." (*Ibid.*)

Here, plaintiff alleges that prison officials confiscated his property, including "legal property."  According to the complaint, Lieutenant Anthony said he would return the legal materials, but failed to do so.  The unreturned documents allegedly included "all of [plaintiff's] . . . legal paperwork."  Plaintiff alleged that he had "a pending legal deadline and needed his legal work."  Because this is an appeal from a demurrer, we treat these allegations as true.  (*Thrifty Payless, Inc. v. Americana at Brand, LLC* (2013) 218 Cal.App.4th 1230, 1234, fn. 1.)  And, if true, the allegations could form the core of a viable denial of access claim.  (*Lewis v. Casey, supra,* 518 U.S. at p. 350 [Supreme Court has protected right to access courts "by prohibiting state prison officials from actively interfering with inmates' attempts to prepare legal documents"] , citing *Johnson v. Avery* (1969) 393 U.S. 483, 489-490.)

Notably, the Supreme Court has imposed specific pleading requirements for denial of access claims.  (See *Christopher v. Harbury, supra,* 536 U.S. at p. 415.)  Here, plaintiff failed to satisfy those requirements by 1) not describing the underlying actions that were adversely affected and 2) not proposing a remedy for the alleged violation. (See *ibid.*)  Therefore, a demurrer did lie as to plaintiff's denial of access claim.  We will therefore affirm the decision to sustain the demurrer.

Next, we must determine if plaintiff must be granted leave to amend this claim. Here, the defect is that plaintiff did not allege sufficient facts regarding the substance of the underlying action, the specifics of how the action was adversely affected by defendants' alleged conduct, or proposed remedies.  Since the complaint does not show on its face that it is incapable of such an amendment, we direct the court to grant plaintiff leave to amend the complaint as to the claim he was unconstitutionally denied access to the courts.

### 3. *Negligent Supervision (Fifth Cause of Action)*

The court sustained the general demurrer to the fifth cause of action on the basis that defendants Anthony, Cate, McGuyer, Milligan, Nimrod, Pimentel, Silveria, and Vanderhooven could not be liable for negligent supervision because they are public employees.

12

"[A] public employee is not liable for an injury caused by the act or omission of another person." (Gov.Code, § 820.8.) This immunity bar, however, does not apply when the public employee has some personal culpability for the injury. "Nothing in this section exonerates a public employee from liability for injury proximately caused by his own negligent or wrongful act or omission." (*Ibid.;* cf. *Weaver v. State of California* (1998) 63 Cal.App.4th 188, 202-203 [no personal involvement shown and no negligent supervision or negligent training alleged].)

Preliminarily, we note that defendants Silveria and Pimentel were not named in the fifth cause of action. Rather, this cause of action was limited to the alleged acts of defendants Cate, Adams, Nimrod, Vanderhooven, Anthony, McGuyer, Stark, and Foston with respect to "their failure to properly, independently investigate" plaintiff's claim, and that each of these defendants "having knowledge of plaintiff's pending case, and missing property continued to ignore their duty to return plaintiff his legal property or have him fill out the requisite property disposition form."

In this situation, there were ample facts alleged to support a negligence cause of action against Cate, Adams, Nimrod, Vanderhooven, Anthony, and McGuyer[3] based on negligent supervision and training which would take these defendants outside the immunity bar of section 820.8 of the Government Code. M. Cate was alleged to be the Director of the CDCR and who "exercises final an overall responsibility for the policies, practices, training and actions" of all CDCR employees; D.G. Adams was alleged to be the "designated Warden" at Pelican Bay and who was "responsible for . . . the training and supervising [ ] of all employees" at Pelican Bay; M.J. Nimrod was alleged to be the "designated Associate Warden" at Pelican Bay, who was in the position of "training and supervising all employees" at Pelican Bay; F. Vanderhooven was alleged to be a "correctional Lieutenant," and who "issued the warrant/order" to the IGI officers "who seized plaintiff's property and was/is responsible to oversee training and conduct" of IGI

---

[3]    To the extent the fifth cause of action alleges conduct on part of defendants Stark and Foston, we express no opinion inasmuch as these defendants were not part of the demurrer below and are not parties to the instant appeal.

13

officers; it was further alleged that Vanderhooven "personally searched plaintiff's property after it [had been] seized" and he responded to plaintiff's informal grievance and was therefore "responsible [] for . . . insuring the investigation . . . and the return of [plaintiff's] bailed property"; W. Anthony was alleged to be a "correctional Lieutenant" assigned to the ISU and that he "issued the warrant/order" to "the IGI officers who seized plaintiff's property and was/is responsible to oversee training and conduct" of IGI officers; it was further alleged that Anthony "personally searched plaintiff's property after it [had been] seized" and he responded to plaintiff's grievance at the "Warden's level of review," and therefore "responsible [] for . . . insuring the investigation . . . and the return of [plaintiff's] bailed property"; K.L. McGuyer was alleged to be a "correctional Captain" assigned to the ISU and the "immediate supervisor" of all ISU and IGI "staff named herein and is responsible to overseeing training and conduct of those staff"; it was further alleged that McGuyer approved the order assigning the IGI officers who seized plaintiff's property and he was responsible for overseeing plaintiff's complaint at the "Warden's level."

Construed liberally, plaintiff's allegations state a claim for negligence with respect to Director Cate, Warden Adams, Associate Warden Nimrod, Lieutenant Vanderhooven, Lieutenant Anthony, and Captain McGuyer based on their personal involvement and/or negligent supervision in the handling of plaintiff's property.

## D. *Uncertainty*

Ordinarily, our inquiry into an order sustaining a general demurrer "ends and reversal is required once we determine a complaint has stated a cause of action under any legal theory." (*Genesis Environmental Services v. San Joaquin Valley Unified Air Pollution Control Dist.* (2003) 113 Cal.App.4th 597, 603.) Under this rule, our analysis could have been limited to the bailment and conversion claims. We, however, chose to address plaintiff's right to own property, access-to-court, and negligent supervision causes of action because those claims presented legal questions that, if resolved in this appeal, could promote the efficiency of subsequent proceedings. As a result, our

14

directions to the trial court are more detailed than a simple direction to enter an order overruling the general demurrer. (See *id.* at p. 608.)

From our reading of the complaint it is not clear whether plaintiff intends to pursue any California tort law claim concerning damage to personal property (i.e., nonconstitutional claims). Under California statute, a demurrer may be sustained on the ground that the "pleading is uncertain." (Code Civ. Proc., § 430.10, subd. (f).) Based on this statute, we direct the trial court to sustain the demurrer as to potential California tort law claims for damage to personal property. (1 Weil & Brown, Cal. Practice Guide: Civil Procedure Before Trial (The Rutter Group 2014) ¶ 6:104, p. 6–28.)

The court shall allow plaintiff an opportunity to resolve this uncertainty by amending his pleading and clarifying whether he intends to pursue any state tort law claims (see Cal. Rules of Court, rule 2.112(2) [each separately stated cause of action or count must specifically state its nature (e.g., " 'for fraud' ").]

Additionally, plaintiff has brought five causes of action against 13 defendants. Each of the causes of action appear to be lodged against all of the defendants. However, certain causes of action refer to individual defendants by name, while others merely reference the defendants as a group. In this regard, the complaint is uncertain as it fails to specify the basis for liability for each defendant. Thus, sustaining the demurrer for uncertainty was not improper. However, denying leave to amend was an abuse of discretion. The court shall allow plaintiff an opportunity to resolve this uncertainty by amending his pleading and clarifying the basis of liability for each defendant.

*E.*     *Costs*

An order awarding fees and costs " 'falls with a reversal of the judgment on which it is based.' [Citation.]" (*Merced County Taxpayers' Assn. v. Cardella* (1990) 218 Cal.App.3d 396, 402; *Ryan v. California Interscholastic Federation-San Diego Section* (2001) 94 Cal.App.4th 1048, 1082.)  Inasmuch as the judgment must be partially reversed, the award of costs must be reversed as well.

## III. DISPOSITION

The judgment is reversed with respect to the first, second, and fifth causes of action.  As to the third and fourth causes of action, the judgment is reversed only insofar as it denies leave to amend plaintiff's right to own property and denial-access-to-the-courts claims.  The superior court is directed to enter an order 1) overruling the demurrer as to the first, second, and fifth causes of action; 2) sustaining the demurrer to plaintiff's third cause of action with leave to amend; 3) sustaining the demurrer to plaintiff's fourth cause of action with leave to amend; 4) sustaining the demurrer on grounds of uncertainty and with leave to amend as to any California tort law claims for damage to personal property and to specify the basis of liability for each defendant.

The parties to bear their own costs on appeal.

_____
REARDON, J.

We concur:


_____
RUVOLO, P. J.


_____
RIVERA, J.

17

*Castlin v. M. Cate* A140895