Filed 1/19/22  Entertainment Lane v. City of Salinas CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| ENTERTAINMENT LANE, INC. et al., | |
| Plaintiffs and Appellants, | G060375 |
| v. | (Super. Ct. No. M131833) |
| CITY OF SALINAS, | O P I N I O N |
| Defendant and Respondent. | |

Appeal from a judgment of the Superior Court of Monterey County, Susan J. Matcham, Judge.  Affirmed.

Thomas Vogele & Associates, Thomas A. Vogele, Brendan M. Loper; Jeff Lewis Law, Jeffrey Lewis and Sean Rotstan for Plaintiffs and Appellants.

Christopher A. Callihan, City Attorney, Michael Mutalipassi, Assistant City Attorney; Law Offices of Joel Franklin and Joel Franklin for Defendant and Respondent.

\*          \*          \*

## INTRODUCTION

Entertainment Lane, Inc. (ELI) and Anthony Lane own the Fox Theater in downtown Salinas and operate the theater as a venue for live entertainment and gatherings. In 2012, the City of Salinas (the City) sent Lane a notice that the theater was not in compliance with the City building code and endangered public safety because an inspection suggested the theater had roof trusses that were supported by an unreinforced masonry wall. The City also cited ELI and Lane for allowing religious assemblies to be held on the ground floor of the theater in violation of the City zoning code. ELI and Lane had expensive seismic retrofitting improvements made to the Fox Theater and ended a valuable lease with the church that used the theater for worship services.

ELI and Lane sued the City under 42 United States Code section 1983 (section 1983) for violation of constitutional rights. They alleged the City's representations and actions in connection with the Fox Theater's compliance with seismic strengthening provisions of the building codes, enforcement of those codes, and prohibition of religious assemblies at the theater, constituted a deprivation of their substantive due process rights under the Fourteenth Amendment to the United States Constitution. The trial court granted the City's motion for summary judgment.

We affirm. The standard for proving a substantive due process violation is high indeed: A substantive due process violation requires proof that the government engaged in "outrageous or egregious" conduct—"a true abuse of power." (*Galland v. City of Clovis* (2001) 24 Cal.4th 1003, 1032 (*Galland*).) Government error, mistake, or negligence does not constitute a substantive due process violation. (*Id.* at pp. 1033, 1034.) The evidence presented in connection with the summary judgment motion, viewed in a light most favorable to ELI and Lane, is not reasonably susceptible to the inference that the City acted outrageously or egregiously or abused its power. The City's actions, viewed individually or in their totality, do not amount to a substantive due process violation as a matter of law. The City, though proven to be mistaken in some

2

ways, engaged in conduct that was rationally related to its power and responsibility to protect public safety and prevent loss of life and damage from earthquakes.

## FACTS

### I. The City's Seismic Strengthening Ordinance

Following the 1989 Loma Prieta earthquake, the City enacted Ordinance No. 2106, entitled the "Seismic Strengthening Provision for Unreinforced Masonry (URM) Buildings," (the Seismic Strengthening Ordinance), which went into effect in October 1990. That ordinance's stated purpose is "to promote public safety and welfare by reducing the risk of death or injury that may result from the effects of earthquakes on existing unreinforced masonry bearing wall buildings." (Seismic Strengthening Ord., § 9-5.1.) The Seismic Strengthening Ordinance applies "to all existing buildings having at least one unreinforced masonry bearing wall." (Seismic Strengthening Ord., § 9-5.2.)

Section 9-5.5 of the Seismic Strengthening Ordinance requires that a building which lacks a seismic resisting system conforming to building code requirements be altered and repaired to meet those requirements and the provisions of the Seismic Strengthening Ordinance. (Seismic Strengthening Ord., § 9-5.5(a), (b).) Section 9-5.11(c) states in relevant part: "The owner of each building within the scope of this Article shall, upon service of an order and within the time limits set forth in this Article, cause a structural analysis to be made of the building by an engineer or architect licensed by the State . . . and, if the building does not comply with earthquake standard specified in this Article, the owner shall cause it to be structurally altered to conform to such standards or shall cause the building to be demolished." (Seismic Strengthening Ord., § 9-5.11(c).)

Adjacent buildings are addressed in section 9-5.10(h). If an adjacent building has an exterior unreinforced masonry bearing wall that does not have a separation of at least five inches, then "supplemental vertical gravity load-carrying

3

members shall be added to support the loads normally carried by the wall and such members shall not be attached to the wall."  (Seismic Strengthening Ord., § 9-5.10(h)(2).)

## II.  Lane's Purchase of the Fox Theater

Lane was one of two members of Gemini Theater LLC (Gemini) which, in May 2007, purchased the Fox Theater in downtown Salinas for $950,000.  In September 2006, before purchasing the theater, Lane met with his engineer (Michael Martin) and various City officials.  The City officials told Lane that the theater had no earthquake, earthquake retrofit, or unreinforced masonry issues, the theater was not an unreinforced masonry building, and the theater was not on the City's list of unreinforced masonry buildings.  City officials also told Lane that, based on reviews and inspections made after the 1989 Loma Prieta earthquake, all earthquake issues for buildings in downtown Salinas had been reviewed and updated and all necessary earthquake repairs were known and identified.

In 2007, Gemini applied for and received a conditional use permit (the CUP) for continued operation of the Fox Theater with the addition of live entertainment and on-site alcoholic beverage sales.  The CUP excluded use of the theater for "assembly and similar uses described in Zoning Code Section 37-40.310(a)(2)," which provides that "[c]lubs, lodges, places of religious assembly, and similar assembly uses shall only be permitted above the ground floor of the buildings facing Main Street within the downtown core area."

Lane spent between $648,000 and $700,000 making upgrades to the Fox Theater.  The theater was operated successfully thereafter for a number of years.  In July 2012, ELI, which is owned solely by Lane, acquired the Fox Theater.

## III.  The City's Inspection of the Theater and Lane's Response

In January 2012, City building officials Joseph DeSante and Dennis Richardson met with Lane at the Fox Theater.  DeSante and Richardson told Lane that he

4

did not have permits for the upgrades made in 2008 and the theater looked to be an unreinforced masonry building. On January 31, 2012, Lane sent Richardson an e-mail message stating, "upon first inspection with Mike Stone (Salinas Building Dept.) and our Engineer Michael Martin it was established at that time back in 2007 that the wall was OK and no retrofitting was needed." (Some capitalization omitted.)

On the same date, Richardson responded to Lane with an e-mail message stating: "You were advised of our need to inspect for this issue during our meeting recently with the Mayor. After the inspection I shared with you what we [had] observed in the attic which was the main trusses running north and south appear to bear on the apparently unreinforced masonry wall to the south. . . . [¶] The [C]ity is required to address all unreinforced masonry by state law and we have advised you of this fact. There were no apparent roof to wall connections from a retrofit visible so we are looking in our files to see how or if this was addressed. We were only able to access a limited portion of this area and then only from a distance. Any information you have or additional investigation from your engineer will be welcomed. In many instances the roof to wall connection is very economical so no need yet to panic but this will need to be eventually resolved in some manner."

Lane consulted with his engineer, Martin, who informed Lane that the Fox Theater was structurally sound and not an unreinforced masonry building. On February 2, 2012, Lane sent Richardson an e-mail message stating: "It is important that you further and carefully consider your proposed 'unsafe building posting' on The Fox Theater before you proceed. Our research shows that you are incorrect on the facts that you intend to use to post the building as unsafe for seismic concerns." In this e-mail, Lane informed Richardson that Martin had "traced the load path" and had concluded that "the subject 'masonry wall' is not considered load bearing nor is it our wall," there were "no lateral or vertical loads being carried by any masonry wall," and "[t]he [roof] trusses are not supported by any masonry wall belonging to The Fox Theater or anyone else."

5

Lane stated that the City had already "visited" the issue of seismic retrofitting "after the initial quake damage surveys when the City was involved in a purchase or encouraging a purchase of the building later in the 1990's, at which time again the building was cleared of retrofit requirements."

In the February 2, 2012 e-mail, Lane requested a copy of the City's 1989 list of unreinforced masonry buildings. Lane warned the City that if it posted the Fox Theater as an unreinforced masonry building, "[t]he economic and business damages which would accrue . . . would have a potentially devastating effect on our business and could be viewed only as capricious or vindictive."

In a declaration submitted in opposition to the City's motion for summary judgment, Martin testified that in February or March of 2012 he performed a "rigorous on-site inspection" of the Fox Theater "specifically to examine whether the URM wall was supporting the existing roof trusses." After completing the inspection, Martin concluded: (1) "The roof trusses were not being supported by the masonry wall, but were being supported by a wooden, heavy timber, braced frame bearing wall which ran almost parallel to the URM wall in question"; (2) although the tip of the roof truss and a concrete grade beam extended into the masonry wall, this was done to prevent rain and other elements from entering the space between the Fox Theater and an adjacent building, and not as a method of supporting the roof trusses; and (3) the unreinforced masonry wall was part of an adjacent building and did not, and was never intended to, carry the roof truss loads.

Martin orally reported his opinion to Lane, DeSante, and Richardson. Martin did not prepare a written report and did not conduct a structural analysis of the Fox Theater as Lane had not asked him to do so.

Richardson responded to Lane on February 2, 2012 with an e-mail stating: "[T]he facts in your statements below do not appear to be correct from all of the information we have regarding the wall. As I stated in the prior e-mail the trusses in your

6

building, by all evidence we were able to observe with bad lighting and limited and incomplete access to the attic, bear on the unreinforced masonry wall. We could find no indication of a vertical column where we inspected the wall in the attic however if that is the case we would certainly welcome that information." Richardson asked Lane to provide the City with his engineer's report and a "signed and stamped copy" of his engineer's opinion, along with "pictures, locations and facts regarding his inspection." Richardson informed Lane that the City "will diligently follow up on any clarification report provided by your engineer."

On February 7, 2012, Lane sent Richardson an e-mail stating: "Before we . . . are forced to expend more dollars on professional engineering fees, it seems appropriate to ask you to search the City's files and records for documents that seem to have been misplaced regarding building engineering." Lane informed Richardson that the Fox Theater was not on the City's 1989 list of unreinforced masonry buildings. Lane suggested that the request for an engineer's report was "punitive" and that "[t]here seems to be an anti-business culture from certain City offices."

Richardson responded on February 8, 2012 with an e-mail informing Lane that Richardson had left Martin a telephone message asking him to call to discuss his findings. "Hopefully speaking with him will shed some light on the conditions you have described which seem to run contrary to the photos we have provided you." Richardson acknowledged the fact the Fox Theater was not on the City's 1989 list of unreinforced masonry buildings, but added, "[w]hat is relevant is the best available information relative to the condition of your building at this point in time." In the e-mail, Richardson stated: "In addition to requesting any engineering reports of opinions formed by your engineer (realizing there may be none), I offered to review any information you can send me as well as offered to meet him at the site or talk with him over the phone."

7

## IV. The City's Notice and Order to Correct Fire and
## Building Structural, Accessibility, and Life Safety Issues

On March 16, 2012, Lane sent Richardson an e-mail informing him that Martin had agreed to meet with City officials. In that e-mail, Lane also stated that he would be out of town as of the following Monday to be with his father, who had been diagnosed with terminal cancer.

Ten days later, on March 26, 2012, the City sent Lane, on behalf of Gemini, a "Notice and Order to Correct Fire and Building Structural, Accessibility, and Life Safety Issues" (the Notice). The Notice cited Gemini for noncompliance with the City building code in that "[t]he roof truss system and lateral force distributing elements are partially supported by unreinforced [masonry] (URM) construction along the south wall of the building" and "[f]ield inspection shows installation as provided is not braced to prevent rotation or translation of newly installed built-up members." Gemini was ordered to "[s]tucturally evaluate to justify and obtain a building permit for work needed to retrofit or repair" the theater within three months of service of the Notice and to complete all necessary work and obtain "permit final inspection" within six months from the date of service of the Notice.

The Notice stated: "Currently the building is not included on the City's list of [unreinforced masonry] buildings; however, it will be added. As a result, you are obligated to comply with the requirements imposed upon [unreinforced masonry] buildings by state law and to comply with all applicable local ordinances pertaining to [unreinforced masonry] buildings." The Notice informed Gemini of its right to appeal the Notice.

The deadlines imposed by the Notice were inconsistent with the Seismic Strengthening Ordinance, which sets forth the following deadlines for seismic retrofitting of buildings seating 100 or more persons: (1) One and one-half years to provide a structural analysis and plans for structural alteration or demolition; (2) two and one-half

8

years to obtain necessary permits; (3) three and one-half years to begin construction (with possibility of 180-day extension); and (4) five years to complete construction (five and one half years if the owner had obtained an extension of time to begin construction).

Under the Seismic Strengthening Ordinance, ELI and Lane could have sought to comply with the Notice by having a licensed engineer conduct a structural analysis of the Fox Theater to demonstrate the theater's compliance with the ordinance. (Seismic Strengthening Ord., § 9-5.11(c).) Instead, in response to the Notice, Lane sent City officials a letter dated May 4, 2012 requesting an appeal of the unreinforced masonry/seismic retrofitting violations of the Notice. Lane expressed dismay that the Notice had been served on him only ten days after he had asked Richardson to "put everything on hold" because Lane needed to leave to be with his father. Lane believed this was done "deliberately to hurt me." Lane requested a "final meeting" with City officials, including the City attorney, City manager, and City mayor "to work this situation out."

The meeting was held on January 24, 2013. Lane and his "design team" presented information about structural repairs required by the Notice and estimated the cost of the repairs required by the City to be between $700,000 and $1 million. Lane said he could not afford the repairs. City staff agreed to meet with Lane's design engineer to discuss other repair options.

On January 30, 2013, City building department staff met with Lane's structural engineer, Wisam Nader. They evaluated several repair options that would satisfy the requirements of the Notice. In a letter dated March 6, 2013, DeSante wrote that "[s]ince that meeting, we have not received any communication from you or your consultants." The March 6 letter set forth new and extended deadlines to complete the structural repairs, but the new deadlines (six months to complete repairs) were still far shorter than those imposed by Seismic Strengthening Ordinance.

9

In a letter dated April 30, 2013, DeSante informed Lane that the compliance deadlines had been revised to comport with the Seismic Strengthening Ordinance. Under the new deadlines, structural alterations to the theater had to be completed by February 6, 2018. On May 1, 2013, the City recorded a certificate of unreinforced masonry construction status against the theater.

In June 2013, ELI applied for a building permit for the structural retrofit of the south side wall of the theater. The City approved the permit in March 2014; however, ELI never "pulled" the permit and let it expire without completing the seismic retrofit by the February 6, 2018 deadline.

### V. Use of the Fox Theater for Worship Services

In July 2012, ELI had entered into a contract to lease space in the Fox Theater to Comunidad Christiana de Fe Church (the Church) at the rate of $5,500 per month. The Church leased the space for its worship services of one to three hours each week. Lane spent about $20,000 on renovations to accommodate the Church. In early 2013, the City received complaints from downtown businesses that churchgoers were using up a lot of the parking spaces on Main Street.

On February 5, 2013, the City issued ELI a Notice of Violation for violation of the CUP and Zoning Code section 37-40.310(a)(2) on the ground that "[u]se of the Theatre for Religious Assembly is not Permitted." On February 27, the City issued ELI an Administrative Citation on the ground "Theatre used for religious assembly." (Some capitalization omitted.) The citation required correction of the violation or other arrangement with the City by March 6, 2013 in order to avoid a $100 fine and further action, and notified ELI of its right to appeal the citation. ELI did not appeal the citation.

Lane testified in his deposition that the Church was meeting both "upstairs" (the mezzanine) and "downstairs" (the ground floor) and that in 2014 he learned the City Zoning Code permitted religious assemblies on the second floor of the Theater. In

10

response to "persistent pressure from the City," ELI agreed to terminate the lease with the Church.

## VI. Lane's Public Records Request

In October 2014, Lane made a public records request to the City for copies of records dating from November 11, 2011 to October 15, 2014 pertaining to the Fox Theater. The City's response included the City's 1989 list of unreinforced masonry buildings and an inspection report for the Fox Theater dated June 24, 1976 prepared by the engineering firm of Ruth, Going and Curtis, Inc. (the Ruth Going Report).

On the front of the Ruth Going Report in unidentified handwriting is a notation, "Not URM."[1] According to the Ruth Going Report, the Fox Theater has no masonry walls. The masonry wall that is the subject of the Notice is part of an adjacent building called the Central Building.

Also produced by the City were print copies of e-mail communications from August 2012 and April 2013 regarding the lease with the Church and whether the use of the theater by the Church violated the prohibition on religious assemblies on the ground floor. In one e-mail, Alan Stumpf, the assistant director of the City's Community and Economic Development Department, asked, "[i]f [the] Fox [Theater] is used only infrequently by a church group on Sunday mornings and the rest of the time is an entertainment venue, do we have some flexibility?" City Planning Manager Courtney Grossman responded: "A potential option: If the service occurs on the mezzanine level, it's technically compliant." Stumpf responded: "I would like to have a little more information about what's going on. If the building is not a church, but is used by a church group for a service of one or two hours per week, that's not the predominant use

---

[1] At oral argument, counsel for ELI and Lane asserted the City had redacted this notation from the copy of Ruth Going report produced to ELI and Lane. ELI and Lane did not make that assertion in their appellate briefs, and the notation "Not URM" appears on the copy of the Ruth Going Report submitted in opposition to the City's summary judgment motion.

11

of the building.  You could almost call it an extension of the building's function as a live entertainment venue."  This exchange previously had not been made known to Lane.

### VII.  Seismic Retrofitting of the Fox Theater and Martin's Structural Analysis

On April 12, 2018, the City issued a Notice and Order to Repair or Abate (the Repair or Abate Order), which cited the failure to seismically retrofit the theater, unpermitted substandard construction, and lack of an adequate fire suppression system. The theater was deemed unsafe for occupancy and was shut down.  ELI was given 60 days in which to comply with the Repair or Abate Order.

ELI and Lane filed a request for an expedited appeal to the City Council. The appeal challenged only the part of the Repair or Abate Order concerning the unreinforced masonry wall.  ELI and Lane asserted that the unreinforced masonry wall was not part of the theater, the wall was not used to support the roof trusses, and the Ruth Going Report had determined the theater had no unreinforced masonry.  After conducting a public hearing, the City Council unanimously denied the appeal.  ELI and Lane later requested and received a 30-day extension of the compliance deadline.

In April 2018, ELI commenced construction of a steel wall between the unreinforced masonry wall and a wooden wall.  During the course of construction, Martin was able to get a more in-depth look at the roof trusses and the unreinforced masonry wall.  He discovered that of the five trusses, two were attached to a reinforced concrete wall and three were inserted into alcoves in the unreinforced masonry wall and did not touch the wall.  Martin concluded, "[a]s a result, it was evident that the trusses were not supported in any manner by the URM wall."

Martin wrote a letter to the City dated July 31, 2018 to report his findings. The letter states:  "During the recent construction activity at The Fox Theater, I made numerous field inspections of the truss system's new structural steel moment frame, which will be completed next week.  In particular, I have examined the connection of the

12

existing truss system to the existing wood bearing wall and I stand 100% behind my original conclusion that these trusses are not being supported by the masonry wall, which is an element of the adjacent building. Three out of the five trusses are not even touching the masonry wall. Therefore, I can conclude that the theater is presently safe for occupancy, without the aid of the new steel frame." The letter bears Martin's registered professional engineer's seal. The City did not respond to the letter.

Construction of the steel wall was completed in late August 2018. In his declaration, Martin testified: "It is my opinion that the URM wall did not support any portion of the Fox Theater, including the roof trusses, and that the Fox Theater did not and does not have any URM elements and did not and does not constitute a URM building."

The Fox Theater was closed on order of the City from April 12 to August 30, 2018. Lane contended that he and ELI suffered about $875,000 in damages during those five months.

**PROCEDURAL HISTORY**

ELI and Lane filed the present lawsuit in April 2015, before the compliance deadline for completing structural changes to the Fox Theater. The third amended complaint, which was the subject of the summary judgment motion, asserted a single cause of action under section 1983 for violation of constitutional rights.

The third amended complaint alleged: (1) In 2006, City officials assured Lane that the Fox Theater had no seismic retrofitting issues; (2) beginning in 2011 and continuing from 2013 through 2014, the City made unfounded charges that the Fox Theater was an unreinforced masonry building and presented "'life safety issues'"; (3) based on those charges, the City forced ELI to close the Fox Theater for periods of time and required the theater be posted with an earthquake warning notice; (4) the City concealed documents, including the Ruth Going Report, which showed that the Fox Theater had no brick masonry walls; (5) the Fox Theater was not on the City's 1989 list

13

of unreinforced masonry buildings; (6) the wall claimed by the City to be an unreinforced masonry wall is part of the adjacent building; (7) starting in 2011 and continuing through 2014, the City had "deliberately, systematically through its standard policy, custom and design, arbitrarily used state and local law to coerce and pressure Lane to sell the Theater and leave the City"; and (8) the City "[b]anned the operation of a Church at the Theater causing the plaintiffs to lose money in buying out the Church's lease and by losing the monthly rent of $5500 . . . paid to the Theater by the Church."

The third amended complaint further alleged: "The defendant's actions as described herein were and are a deliberate misuse of authority under color of law which deprived the plaintiffs of their substantive due process rights protected by the 14th Amendment [to] the United States Constitution in that it subjected them to arbitrary and irrational treatment which infringed upon plaintiffs' liberty and their property."

The City moved for summary judgment; ELI and Lane opposed. The trial court granted the City's motion for summary judgment. In a written order, the court explained its reasons: "Plaintiffs have advanced two theories of constitutional liability: substantive due process and equal protection. While recognizing that these theories are distinct, the court will proceed with a unitary analysis, because where no fundamental rights or suspect classification are involved, the court must evaluate both claims by subjecting the governmental action in controversy to rational basis review. [Citation.] [¶] The rational basis standard places the burden of persuasion on the complaining party to show that the government acted in an arbitrary or irrational manner. [Citation.] Some courts have also stated that in order to show improper government action under this standard, the government conduct must be 'an abuse of government power' that 'shocks the conscience.' [Citation.] . . . [E]vidence of government mistake or even negligence— would not, without more, be sufficient to raise a triable issue. [¶] The court finds that Defendant, as the moving party, has met its initial burden to show a prima facie case that it did not act arbitrarily or irrationally. Defendant provided copies of the law and

14

ordinances it relied on for legal authority to take the disputed enforcement action. The court finds that this showing shifts the burden to Plaintiffs to raise a triable issue as to the arbitrary or irrational nature of the government action. [¶] The court finds that Plaintiffs have failed to meet their burden to raise a triable issue of fact as to the irrational or arbitrary nature of the government action. The court heard Plaintiffs' legal argumentation and examined the citations to the relevant evidence, including the 1976 Ruth, Going, and Curtis Report, and the spreadsheet listing buildings believed to contain unreinforced masonry. If Plaintiffs' burden were to raise a triable issue as to a mistake— or even negligence—such evidence might well suffice. But in order to proceed to trial on the claim that Plaintiffs have selected, they must adduce evidence of arbitrary or irrational government action. Even drawing all evidentiary inferences in favor of Plaintiffs, the cited evidence has no tendency to show that Defendant took the enforcement actions in an arbitrary or irrational manner."

Judgment was entered in favor of the City.[2] ELI and Lane timely appealed.

## DISCUSSION

### I. Standard of Review

"We review orders granting summary judgment de novo. [Citation.] Summary judgment is warranted if the moving papers establish there is no triable issue of material fact and the moving party is entitled to judgment as a matter of law. [Citations.] [¶] We consider all of the evidence presented by the parties (except for evidence which the trial court properly excluded), liberally construe the evidence in support of the party opposing summary judgment, and resolve all doubts about the evidence in that party's favor. [Citation.] We must draw from the evidence all reasonable inferences in the light most favorable to the party opposing summary judgment." (*Caliber Paving Co., Inc. v.*

---

[2] The trial court awarded the City $10,680 on its cross-complaint to recover on a "micro loan" made to Lane to fund a structural repair analysis of the Fox Theater. The judgment on the cross-complaint was not appealed.

15

*Rexford Industrial Realty & Management, Inc.* (2020) 54 Cal.App.5th 175, 179-180.)
"[S]ummary judgment cannot be granted when the facts are susceptible of more than one reasonable inference." *(Rosas v. BASF Corp.* (2015) 236 Cal.App.4th 1378, 1392.)

## II.  Standards for Proving Deprivation of Substantive Due Process

In the third amended complaint, ELI and Lane asserted a claim under section 1983 for deprivation of substantive due process.  "[T]he arbitrary government conduct that triggers a substantive due process violation is not ordinary government error but conduct that is in some sense outrageous or egregious—a true abuse of power." (*Galland, supra*, 24 Cal.4th at p. 1032.)  Substantive due process does not "encompass governmental mistakes and bureaucratic errors that are something less than an abuse of power." (*Id.* at p. 1034.)  "A substantive due process violation requires more than 'ordinary government error,' and the "'arbitrary and capricious'" standard applicable in other contexts is a lower threshold than that required to establish a substantive due process violation." (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 855-856.)

"'Only a substantial infringement of state law prompted by personal or group animus, or *a deliberate flouting of the law that trammels significant personal or property rights*, qualifies for relief under [section] 1983.  [Citation.]  Inadvertent errors, honest mistakes, agency confusion, even negligence in the performance of official duties, do not warrant redress under this statute.'" (*Galland, supra*, 24 Cal.4th at p. 1034, quoting *Silverman v. Barry* (D.C. Cir. 1988) 845 F.2d 1072, 1080.)  "[A] deliberate flouting of the law may be said to have occurred if the city's demands for information and other procedural demands were so excessive and irrelevant to the regulatory task at hand as to lead a court to conclude that such demands were imposed not in order to obtain more information or increase the reliability of the eventual decision, but rather to

16

obstruct or discourage landlords from either requesting or obtaining reasonable rent increases to which they are constitutionally entitled." (*Galland, supra*, at p. 1036.)

### III.  The Evidence Is Not Reasonably Susceptible to the Inference that the City's Conduct Was Outrageous or Egregious

As the standard of review dictates, we resolve doubts about the evidence in favor of ELI and Lane.  This means we deem to be true the conclusions made by Martin in his July 31, 2018 letter to the City and in his declaration that the theater roof trusses were not supported by a masonry wall, the theater was safe for occupancy without the steel frame retrofit, and the theater did not have any unreinforced masonry elements and was not an unreinforced masonry building.

The City cannot be liable, however, for a substantive due process violation solely because it made mistakes or was negligent.  Reversal is warranted only if it is reasonable to draw from the evidence the inference that the City acted outrageously or egregiously or deliberately flouted the law.  Our independent review of the evidence presented by the parties, viewed in the light most favorable to ELI and Lane, leads us to conclude the evidence is not reasonably susceptible to such an inference.  That is the case whether the City's actions are viewed individually or in their totality.

A.  *ELI and Lane's Contentions*

ELI and Lane argue that the City's actions, when viewed together, raise triable issues of material fact.  In particular, ELI and Lane identify these facts as establishing the City engaged in outrageous conduct and "specifically targeted" him "at a level beyond mere negligence":

1.  At the meeting in September 2006, City officials told Lane the theater needed no retrofits and represented to him the theater was not on the City's list of unreinforced masonry buildings.

17

2.  At the September 2006 meeting, City officials told Lane that all earthquake issues for buildings in downtown Salinas had been reviewed and updated and all necessary earthquake repairs were known and identified.

3.  The City's initial charge that the theater needed retrofits was based on a limited inspection by a City building official.

4.  The theater's prior owner had communications with the City clearing the theater of any retrofitting needs.

5.  The City sent a legal demand to Lane and accelerated the administrative process shortly after learning that his father had terminal cancer.

6.  The City required Lane to post a sign outside the theater advising visitors they would be unsafe inside.

7.  The City imposed deadlines to address the safety issues that were far shorter than those provided by applicable ordinances.

8.  Internal e-mail communications between City officials "confirmed" that Lane could have rented the theater for church services but continued to issue violation notices requiring Lane to terminate the lease with the Church.

9.  The City recorded a notice that the theater was an unreinforced masonry building despite internal City documents stating the theater was not an unreinforced masonry building.

10.  The City did not inform Lane of the Ruth Going Report, which concluded the theater was not an unreinforced masonry building, until 2017, five years after accusing him of operating an unsafe building.

11.  Lane consulted with his own engineer to make sure the theater was not an unreinforced masonry building and informed the City of the engineer's conclusions in February 2012.  The City did not respond in substance to the engineer's conclusions.

12.  The City ignored Lane's requests that the City investigate fully the claim that the theater needed a retrofit.[3]

B.  *A Review of the Evidence*

The facts selected by ELI and Lane do not provide a complete picture or provide context.  Lane contends that in 2006 the City made representations about the Fox Theater to mislead him into purchasing it and to "dupe[] him into expending hundreds of thousands of dollars into improving it."  The evidence is not reasonably susceptible to that inference.  The City's representations made to Lane were accurate when made:  In September 2006, when Lane met with City officials, the theater indeed had no reported unreinforced masonry issues and was not on the City's list of unreinforced masonry buildings.  The City was not forever bound by earlier determinations about the theater and had the ability and the responsibility to enforce its unreinforced masonry ordinance upon discovery of a potential violation.  (Cf. *Stubblefield Construction Co. v. City of San Bernardino* (1995) 32 Cal.App.4th 687, 711 ["A legislative body is generally not bound by the actions of its predecessors"].)

No evidence was presented to connect the City's representations made in September 2006 with Richardson's inspection six years later and the City's issuance of the Notice.  In 2012, Richardson concluded that the Fox Theater's roof trusses appeared to rest on an unreinforced masonry wall on the south side of the building.  His inspection was admittedly limited:  His observations were made at a distance, in poor light, and with incomplete access.  Richardson's photographs did show, and Martin's later investigation confirmed, there was an unreinforced masonry wall that, as it turned out, was part of the adjacent building and some of the roof trusses at least appeared to be supported by that

---

[3]  At oral argument, counsel for ELI and Lane asserted that by granting the City's motion for summary judgment, the trial court had deprived them of the opportunity to conduct further discovery.  This point was not raised in ELI and Lane's appellate briefs, and we have found nothing in the record to indicate that ELI and Lane requested a continuance of the City's motion for summary judgment in order to conduct discovery.

19

wall. Richardson might have acted negligently in conducting his inspection and drawing his conclusions regarding the roof trusses, but negligence is not the appropriate standard. Although eventually shown to be incorrect, Richardson's conclusions based on his inspection were not outrageous or egregious.

Richardson asked Lane to provide the City his own engineer's report and opinion bearing a professional engineer's seal. Martin conducted an inspection of the Fox Theater in February or March of 2012 and concluded the masonry wall did not support the roof trusses. Martin did not, however, conduct a structural analysis or prepare a formal engineer's report; he orally informed Lane, DeSante, and Richardson of his conclusion that the masonry wall was not load bearing. When Lane informed Richardson that the Fox Theater was not on the City's 1989 list of unreinforced masonry buildings, Richardson acknowledged that fact but pointed out that the relevant fact was the best available information about theater's condition at the present time.

The City served the Notice just 10 days after Lane had informed the City that he would be out of town to care for his terminally ill father. The timing of the Notice was indeed callous, and the deadlines imposed were inconsistent with the Seismic Strengthening Ordinance. But the deadlines set in the Notice were never enforced and no evidence was submitted to show that Lane suffered prejudice from the shortened deadlines. The deadlines were ultimately extended to give ELI and Lane the full amount of time (five years to complete construction) provided by the Seismic Strengthening Ordinance. Even if the initial deadlines imposed by the Notice could be described as a "deliberate flouting of the law," the City corrected the error so that a reasonable inference could not be drawn the deadlines were imposed to "obstruct or discourage" ELI and Lane from compliance. (*Galland, supra*, 24 Cal.4th at p. 1036.)

Lane had the option, and the obligation under section 9-5.11(c) of the Seismic Strengthening Ordinance, to "cause a structural analysis to be made of the building by an engineer or architect licensed by the State." Richardson had requested an

engineer's report, but Lane characterized that request as punitive and did not request Martin to conduct a structural analysis of the theater. Martin did not conduct such an analysis until years later. A structural analysis and formal report bearing Martin's professional seal very well might have resolved the issues raised by the Notice without the need for expensive seismic retrofitting. But Lane chose not to have one conducted. The City did not act outrageously or egregiously by declining to accept an oral report of Martin's findings and insisting on a formal structural analysis.

Instead of having a structural analysis conducted, Lane went ahead with plans prepared by his design engineers to make the structural repairs required in the Notice. ELI applied for and received a building permit for the structural retrofit of the unreinforced masonry wall on the south side of the theater. The permit was approved in March 2014, but ELI never pulled the permit and let it expire without completing the seismic retrofit by the February 2018 deadline.

The evidence does not support an inference that the City acted outrageously or egregiously with respect to use of the theater for worship services. The CUP issued to Gemini excluded use of the Fox Theater for "assembly and similar uses described in Zoning Code Section 37-40.310(a)(2)," which in turn permitted religious assembly only above the ground floor. Those restrictions were no secret: They are found in the CUP, which ELI and Lane had, and the municipal code, which is available to the public. The Church was impermissibly allowed to hold worship services on the ground floor of the Fox Theater. Lane testified to that. The City properly cited ELI, and ELI did not appeal the citation. (See *Galland, supra*, 24 Cal.4th at p. 1036 ["a landlord who believes that a rent board's information request is arbitrary and overly burdensome must register an objection to the request and give some explanation for the objection"].)

It might have been possible for worship services to be held on the mezzanine and upper levels of the Fox Theater, but ELI and Lane never explored that option. ELI and Lane could easily have referred to the City municipal code, which was

21

public information, and determined whether worship services could be held somewhere within the theater. Although there were internal e-mail discussions among City officials about holding worship services on the upper levels of the theater, no conclusion was made.

The City did not inform Lane of the Ruth Going Report, and ELI and Lane contend the City suppressed the report as part of a "deliberate cover up." The significance of the Ruth Going Report, according to ELI and Lane, is that it identifies the Fox Theater as not an unreinforced masonry building. The fact the Fox Theater was not on the City's 1989 list of unreinforced masonry structures was never hidden or concealed from ELI or Lane. In 2012, Richardson acknowledged the theater was not on that list, and the Notice states "[c]urrently the building is not included on the City's list of [unreinforced masonry] buildings; however, it will be added." Although, according to the Ruth Going Report, the Fox Theater had no masonry wall, it was no secret that the masonry wall in question was part of an adjacent building. Under section 9-5.10(h) of the Seismic Strengthening Ordinance, it was necessary for ELI and Lane to show that the theater's roof trusses did not rely on the adjacent unreinforced masonry for carrying loads during an earthquake.

Further, the Ruth Going Report dates from June 1976 and was based on 1973 earthquake standards. Those earthquake standards were updated after the 1989 Loma Prieta earthquake. Finally, the Ruth Going Report states that "it is beyond the scope of this investigation to determine the strength, size & spacing of the concrete [walls], a meaningful analysis at this time is impossible" and recommends "a thorough investigation under gravity & seismic loads should be made."

The structural retrofit was not commenced or completed within the five-year deadline for complying with the Notice. The City therefore did not act outrageously or egregiously by serving the Repair or Abate Order, deeming the Fox Theater to be unsafe for occupancy, and temporarily shutting it down. ELI and Lane

22

received extensions to comply with the Notice requirements. In April 2018, ELI commenced construction of a steel wall between the unreinforced masonry wall and a wooden wall.

During the course of this construction, Martin conducted the structural analysis that could, and probably should, have been conducted six years earlier. He at last prepared a formal report on which he affixed his professional seal. Martin concluded the unreinforced masonry wall did not support the roof trusses and the theater was safe for occupancy without the steel wall that was then being constructed.

C. *Conclusions*

From the evidence, viewed in the light most favorable to ELI and Lane, a reasonable inference cannot be drawn that the City acted outrageously or egregiously. The City's actions were not "irrelevant to the regulatory task at hand" (*Galland, supra*, 24 Cal.4th at p. 1036) and were "'sufficiently keyed to . . . legitimate state interests'" (*Stubblefield Construction Co. v. City of San Bernardino, supra*, 32 Cal.App.4th at p. 710). It cannot be doubted that, in California, seismic safety of buildings is a legitimate government concern. (*Copp v. Paxton* (1996) 45 Cal.App.4th 829, 843 ["Earthquake safety and procedures in an urban area through which a great fault runs is of vital public concern"].) Following the Loma Prieta earthquake in 1989, the City enacted the Seismic Strengthening Ordinance with the purpose "to promote public safety and welfare by reducing the risk of death or injury that may result from the effects of earthquakes on existing unreinforced masonry bearing wall buildings." (Seismic Strengthening Ord., § 9-5.1.) The City may validly exercise its police power to promote "public health, safety, morals, and general welfare" by enforcing building codes and zoning ordinances. (*Miller v. Board of Public Works of Los Angeles* (1925) 195 Cal. 477, 487-488.)

Richardson's findings, albeit based on a limited inspection, had a rational basis. Given the potential for loss of life and damage from an earthquake, and the City's

23

responsibility to protect public safety, it was not irrational, and certainly not outrageous or egregious, for the City to issue the Notice, pursue remediation of the Fox Theater, and require Lane to post a notice that the theater might be unsafe for occupancy. For the same reasons, the City was justified in requesting that ELI and Lane submit a formal engineer's report. It is highly significant that ELI and Lane might have avoided the cost of seismic retrofitting by exercising their option under the Seismic Strengthening Ordinance of having a structural analysis of the theater conducted and a formal engineer's report prepared once they had received the Notice. But they did not have Martin conduct this type of analysis until 2018, during construction of the steel wall.

Although ELI and Lane argue that a jury should be permitted to judge the City's motives, they presented no evidence to support their claim the City acted out of personal animus toward them or singled them out. For example, ELI and Lane presented no evidence that the City enforced the building code against them while declining to enforce it against others in the same or similar situation. None of the communications from the City reflect any kind of personal animus. At oral argument, counsel for ELI and Lane did not know of any reason why the City might have acted out of personal animus toward Lane. Further, the motivation of individual government actors is irrelevant if the government's action substantially advances a legitimate government interest. (*Breneric Associates v. City of Del Mar* (1998) 69 Cal.App.4th 166, 184-185; see *Landgate, Inc. v. California Coastal Com.* (1998) 17 Cal.4th 1006, 1022 ["courts do not delve into the individual purposes of decisionmakers in a quasi-adjudicative proceeding"].)

When viewed in the light most favorable to ELI and Lane, the evidence might be susceptible to an inference that the City was wrong, mistaken, and/or negligent in issuing the Notice and the Repair or Abate Order, finding the unreinforced masonry wall adjacent to the Fox Theater supported the roof trusses, and requiring ELI and Lane to post signs that the theater was unsafe and to make expensive retrofit improvements to

the theater.  But government error, mistake, or negligence does not constitute a substantive due process violation.  (*Galland, supra*, 24 Cal.4th at pp. 1033, 1034.)

## DISPOSITION

The judgment is affirmed.  Respondent to recover costs on appeal.


FYBEL, J.

WE CONCUR:


BEDSWORTH, ACTING P. J.


MOORE, J.